UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERRY DURR** | * | **CIVIL ACTION NO.: 2:18-cv-3742** |
| | * | |
| **VERSUS** | * | **JUDGE FELDMAN** |
| | * | |
| **GOL, LLC, REC MARINE LOGISTICS,** | * | **MAG. JUDGE KNOWLES** |
| **LLC AND WOOD GROUP PSN, INC.** | * | |
| | * | |

**THIRD-PARTY DEFENDANT'S MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS</u>**

**NOW INTO COURT**, through undersigned counsel, comes third-party defendant First Mercury Insurance Company ("FMIC"), who files this Motion to Dismiss pursuant to Rule 12(b)(6).

**<u>BACKGROUND</u>**

Plaintiff Terry Durr filed suit against GOL, LLC ("GOL), REC Marine Logistics, LLC ("REC") and Wood Group PSN, Inc. ("Wood Group"), alleging claims arising from an accident during a transfer from a vessel to an offshore platform on the Outer Continental Shelf. Plaintiff alleges that at the time of the accident, he was employed by Linear Controls, Inc. ("Linear"). GOL and REC are alleged to be the owners of the vessel. Wood Group is alleged to be the platform operator. Plaintiff alleges Wood Group's failure to properly train its crane operator, and the crane operator's negligence, contributed to Plaintiff's injuries.

Linear contracted with Fieldwood Energy, LLC ("Fieldwood") pursuant to a master services contract to provide services to the platform. Wood Group contracted with Fieldwood to provide services pursuant to its own master services contract. Wood Group has now filed a third-party complaint against Linear and its insurer, FMIC, alleging that Linear is obligated to defend and indemnify Wood Group in connection with Plaintiff's suit by virtue of Linear's

1

agreement with Fieldwood to indemnify Fieldwood's contractors from liability. Wood Group also claims that, pursuant to the terms to the master services agreement between Fieldwood and Linear, it is entitled to defense and indemnity as an insured party under Linear's insurance policies because Fieldwood paid a *Marcel* premium.

**The Contracts**

A Master Services Contract between Linear and Fieldwood (the "Fieldwood/Linear MSC"), dated November 1, 2013, was in effect on the date of the incident. (Rec. Doc. 26-3). Wood Group and Fieldwood had in effect an identical Master Services Contract (the "Fieldwood/Wood Group MSC"). (Rec. Doc. 26-4).

The Fieldwood/Linear MSC defines "Company" as Fieldwood Energy, LLC. "Contractor" is defined as Linear Controls, Inc. and "Contractor Group" as Contractor and related entities, including employees. "Third Party Contractor" is defined as "any other contractor (other than members of Contractor Group) used or employed by Company in connection with the Work." "Third Party Contractor Group" is defined to include employees of a "Third Party Contractor."

The Fieldwood/Linear MSC provides that Linear will indemnify "Third Party Contractor" and "Third Party Contractor Group" for claims of any member of "Contractor [Linear's] Group". Specifically, Art. 13(f) provides:

> (i) TO THE EXTENT COMPANY'S THIRD PARTY CONTRACTOR(S) EXECUTE CROSS INDEMNIFICATION AND WAIVERS SUBSTANTIALLY SIMILAR TO THOSE CONTAINED IN THIS SECTION 13(f), CONTRACTOR HEREBY AGREES TO RELEASE, INDEMNIFY, PROTECT, DEFEND AND HOLD HARMLESS SUCH OTHER THIRD PARTY CONTRACTOR (AND ANY SUCH THIRD PARTY CONTRACTOR GROUP) FROM AND AGAINST ANY AND ALL CLAIMS FOR (1) THE INJURY, ILLNESS OR DEATH OF ANY MEMBER OF CONTRACTOR GROUP AND/OR (l) THE LOSS, DAMAGE, DESTRUCTION AND/OR WRECK AND DEBRIS

>> REMOVAL OF ANY PROPERTY BELONGING TO ANY MEMBER OF CONTRACTOR GROUP, WITHOUT REGARD TO WHETHER ANY SUCH CLAIM IS CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE (WHETHER SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE), STRICT LIABILITY, STATUTORY LIABILITY, CONTRACTUAL LIABILITY OR OTHER FAULT (EXCLUDING ONLY THE GROSS NEGLIGENCE AND INTENTIONAL MISCONDUCT) OF ANY MEMBER OF THE THIRD PARTY CONTRACTOR GROUP OR BY ANY DEFECT OR PRE EXISTING CONDITION (WHETHER KNOWN OR UNKNOWN; PATENT, LATENT OR OTHERWISE).
>
> (ii) Contractor agrees that it will support its mutual indemnity agreement obligations of this Section 13(f) with insurance with the minimum limits not less than those set forth in Section 14 obtained for the benefit of such Third Party Contractor(s) (and any such Third Party Contractor Group)….

Linear's insurance obligations are set forth in Section 14. In respect of Linear's obligation to name additional insureds, Section 14 provides:

> (b) All insurance policies of Contractor…including without limitation those required in accordance with the terms of Exhibit B, shall expressly waive subrogation as to Company Group. Each such policy, other than for worker's compensation policies, shall include Company Group as additional insureds for obligations undertaken and liabilities assumed by Contractor under this Contract….

Section 14 of the Fieldwood/Linear MSC <u>does not</u> include a similar provision requiring Linear to name Third Party Contractors as additional insureds.

**The Insurance Policy**

Policy TX-CGL-0000048355-3 (the "Policy") was issued by FMIC to Linear for the period October 16, 2016 October 16, 2017. (*See* Ex. A). The insuring agreement provides:

> (a) We will pay those sums that the insure becomes legally obligated to pay as damages because of "bodily injury" of "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured againt any "suit" seeking damages for "bodily injury" of "property damage" to which this insurance does not apply. We

3

>> may, at our discretion, invesitgate any "occurrence" and settle any claim or suit that may result. But:
>
>> (1) The amount we will pay for damages is limited as described in Section III – Limits of insurance; and
>
>> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

The Policy contains a number of exclusions, including coverage for contractual liability as follows:

>> (b) Contractual Liability
>
>> "Bodily injury" or "property damage" for which this insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
>> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or property damage", provided:
>
>>> (a) Liability to such party for, of for the cost of, that party's defense has also been assumed in the same "insured contract; and
>
>>> (b) Such attorney fees and litigation expenses are fore defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

"Insured contract" is defined, in relevant part, as "[t]hat part of any other contract or agreement pertaining to your business…under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization….

The Policy contains an Additional Insured endorsement, which modifies the definition of insured to include any person or organization the insured has agreed in writing to add as an additional insured.

## LAW AND ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The Court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[6] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[7]

When deciding a Rule 12(b)(6) motion to dismiss, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8] Insurance policies attached to a motion to dismiss are properly considered when the policies are central to the Plaintiff's claims.[9]

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[2] *Id.*
[3] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[4] *Iqbal*, 556 U.S. at 667.
[5] *Id.*
[6] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[7] *Lormand*, 565 F.3d at 255–57
[8] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[9] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

As demonstrated herein, the pleadings, contracts, and insurance policy establish that Wood Group cannot and has not stated a claim for relief against FMIC. The alleged accident occurred on a fixed platform on the outer continental shelf off the coast of Louisiana. Drilling operations from fixed platforms in Gulf waters are governed by the Outer Continental Shelf Lands Act ("OCSLA").[10] OCSLA provides that the law of the adjacent state, in this case Louisiana, applies as surrogate federal law. Here, the accident undisputedly occurred on a fixed platform on the Outer Continental Shelf at Eugene Island Block 189 off the coast of Louisiana. (See Third-Party Complaint, Rec. Doc. 26 at p. 2).

Louisiana has enacted the Louisiana Oilfield Indemnity Act ("LOIA"), which prohibits indemnification of a party for its own negligence.[11] Specifically, it prohibits:

> Any provision in any agreement arising out of the operations, services, or activities listed…which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section…[12]

In enacting the LOIA, the Louisiana legislature clearly expressed its disdain for such agreements on public policy grounds. The statute is broad, prohibiting "[a]ny provision in any agreement arising out of the operations, services, or activities listed…which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section…"[13] The statute constitutes a total ban on the type of indemnity and coverage Wood Group now seeks.

In *Marcel v. Placid Oil Co*., 11 F.3d 563 (5th Cir. 1994), the Fifth Circuit carved out a narrow exception to the strict anti-indemnity provisions of the LOIA, finding that it does not prohibit insurance agreements where the party seeking indemnity actually pays the cost of the

---

[10] 43 U.S.C. § 1331, *et seq*.
[11] LSA-R.S. 9:2780.
[12] LSA-R.S. 9:2790(G).
[13] LSA-R.S. 9:2780.

6

premium for coverage as an additional insured.  In *Marcel*, the Court explicitly adopted a narrow exception to the LOIA as expressed in *Patterson*.[14]  In *Patterson*, the employee plaintiff was injured on a fixed platform.  His employer sought summary judgment against third-party claims seeking contractual and tort indemnity on the grounds that the LOIA invalidated contractual indemnity and "additional insured" agreements relevant to the claim.  The employer's insurer similarly sought summary judgment.  The *Patterson* court noted that "[o]rdinarily an arrangement of this sort is a violation of [LOIA] and is therefore null, void and unenforceable."[15]  However, because the party seeking indemnity had agreed to reimburse plaintiff's employer (and provided evidence of such reimbursement) for the insurance premiums required to obtain additional insured coverage, found that dismissal of the action against the insurer was not required as a matter of law *because the party seeking additional insured coverage had purchased its own insurance*.[16]  That is the exception adopted in *Marcel*.  Nothing more or else.

The *Marcel* exception has never been expanded to apply to third parties to the payment.[17]  Wood Group nevertheless now asks the Court to take the extraordinary step of widening a narrow exception to a total legislative ban on this type of indemnity agreement to a third party beneficiary who has not purchased its own insurance for an injured worker's employer (Linear) or its insurer.  It is undisputed that Wood Group did not pay a *Marcel* premium and that it is not named as an insured in any policy of insurance issued to Linear related to this case.  Wood Group is not entitled to avail itself of the narrow exception to the LOIA created by the *Patterson* and *Marcel* rulings absent having met these requirements, which it neither alleges nor did.  As a

---

[14] See *Marcel v. Placid Oil Co*., 11 F. 3d 563 (5th Cir. 1994) (ruling "We now adopt this exception created in *Patterson* as law of this Circuit…")
[15] *Patterson v. Conoco, Inc*., 670 F. Supp. 182, 184 (W.D. La. 1987)(citing Babineaux v. McBroom Rig Building Service, Inc., 806 F.2d 1282 (5th Cir.1987)).
[16] *Id*. (emphasis supplied).
[17] Rec. Doc. 22 at p. 9.

result, indemnity agreements contained in the MSCs are, as a matter of law, invalid and unenforceable. Therefore Wood Group has not sufficiently pled a cause of action against Linear or its insurers for contractual defense and indemnity, nor has it pleaded sufficient facts demonstrating that it is entitled to additional insured status.

Likewise, Wood Group has not pleaded sufficient facts demonstrating that it is entitled to additional insured status under the Policy issued by FMIC. The Fifth Circuit has consistently held that contractual provisions requiring a contractor to extend insurance coverage to cover a principal's negligent act are void under the LOIA because such insurance arrangements frustrate the law's express public policy and its purpose.[18] Because the LOIA applies, the defense, indemnity and supporting insurance provisions are void.

Wood Group did not pay a *Marcel* premium to Linear or FMIC for additional insured benefits. Wood Group has not alleged that it paid a *Marcel* premium. Instead, Wood Group suggests that Fieldwood's payment of a *Marcel* premium, which it paid in order for Fieldwood to be able to demand its own defense from Linear, somehow extends coverage to Wood Group. It does not. The Fifth Circuit's ruling in *Marcel* provided a limited and narrow exception to the LOIA where the *indemnitee* itself pays the cost of its *own* premiums. *Id*. at 569. It is applicable only to the extent that "the indemnitee had paid for its own insurance." *Id.* Nothing in the exception provides that indemnity agreements potentially extending to third parties are not void by virtue of a premium payment by another.

Indeed, the Fifth Circuit has found that the payment of a negotiated premium paid by the party to be named as an additional insured, that fairly values and reflects the coverage intended

---

[18] See, e.g., *Roberts Energy Dev. Corp.*, 235 F.3d 935 (5th Cir. 2000); *Hogden v. Forest Oil Corp.*, 87 F.3d 1512 (5th Cir. 1996).

to be extended by the insurer is key to application of the Marcel exception.[19] Here there is no allegation that Wood Group negotiated and paid any portion of the *Marcel* premium it now attempts to invoke.

Further, the Fieldwood/Linear MSC does not require Linear to name Third Party Contractors such as Wood Group as additional insureds. In respect of insurance coverage for Third Party Contractors, the Fieldwood/Linear MSC provides only that Linear "agrees that it will support its mutual indemnity agreement obligations of this Section 13(f) with insurance with the minimum limits not less than those set forth in Section 14 obtained for the benefit of such Third Party Contractor(s) (and any such Third Party Contractor Group)." This provision is substantially different than the provision requiring Linear to name Fieldwood as an additional insured, which provides "[a]ll insurance policies of Contractor… shall expressly waive subrogation as to Company Group. Each such policy… shall include Company Group as additional insureds for obligations undertaken and liabilities assumed by Contractor under this Contract." Wood Group is expressly excluded from the Fieldwood "Company Group" by the MSC's specification of contractors, as Wood Group is a "Third Party Contractor" with its own, separate "Third Party Contractor Group." Because the MSC does not expressly require Linear to name Wood Group as an additional insured, the requirements of the additional insured endorsement are not met and coverage is not owed directly to Wood Group. Therefore Wood Group has not, as a matter of law, pleaded a valid or even plausible cause of action in its Third Party Complaint and its claims against FMIC and Linear should be dismissed.

---

[19] *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 482 (5th Cir. 2002).

## **CONCLUSION**

Wood Group has not sufficiently pleaded plausible third party causes of action against FMIC in connection with Plaintiff's claims. The law, particularly the LOIA, and the indisputable fact that Wood Group did not itself pay a *Marcel* premium completely preclude Wood Group's claim as against public policy. Neither Linear nor FMIC could owe Wood Group defense or indemnity based on the Fieldwood/Linear MSC. Further, FMIC is under no obligation to provide Wood Group defense or indemnity as an additional insured. As such, the Third-Party Complaint should be dismissed for failure to state a valid or plausible cause of action.

**WHEREFORE** third-party defendant First Mercury Insurance Company prays that Wood Group PSN, Inc.'s Third-Party Complaint be dismissed at its own cost, including all attorney's fees and expenses.

Respectfully submitted,

**THOMPSON COE COUSINS & IRONS, LLP**

By: /s/ *Marne A. Jones*
Mark L. Clark, LA State Bar No. 30875
Marne A. Jones, LA State Bar No. 32522
Phoebe Hathorn, LA State Bar No. 35811
THOMPSON, COE, COUSINS & IRONS, L.L.P.
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Email: MLClark@thompsoncoe.com
MAJones@thompsoncoe.com
PHathorn@thompsoncoe.com
Telephone: (504) 526-4320
Facsimile: (504) 526-4310
**ATTORNEYS FOR FIRST MERCURY INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record by facsimile, electronic mail and/or by United States mail, properly addressed, postage prepaid on this the 29th day of November, 2018.

_____/s/ __Marne A. Jones_____