# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY DURR**<br>**Plaintiff** | **CIVIL ACTION NO: 2:18-CV-3742** |
| | **DISTRICT JUDGE:** |
| **VERSUS** | **HON. BARRY W ASHE** |
| **GOL, LLC and**<br>**REC MARINE LOGISTICS, LLC,**<br>**Defendants** | **MAGISTRATE JUDGE:**<br>**HON. JANIS VAN MEERVELD** |

## MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE

Defendants, REC Marine Logistics, LLC ("REC") and GOL, LLC ("GOL") (collectively, "REC/GOL") and American Steamship Owners Mutual Protection and Indemnity Association, Inc. (hereinafter "American Club") (collectively, "the REC/GOL Defendants"), respectfully submit this memorandum in opposition to the *Motion for Leave to Supplement and Amend Plaintiff's Original and Amended Complaint* (R. Doc. 68). In short, to the extent that plaintiff requests leave "to assert additional claims against vessel defendants REC Marine Logistics, LLC and GOL, L.L.C," plaintiff's request for leave should be denied for being futile, inexcusably delayed, unnecessary and unduly prejudicial to the REC/GOL Defendants, as set forth in more detail below.

## BACKGROUND

On or about December 17, 2017, plaintiff, Terry Durr (hereinafter, "plaintiff"), alleges that he was injured while being lifted in a personnel basket from the M/V HANNAH C, a vessel owned and operated by REC, to a Fieldwood Energy ("Fieldwood") offshore oil and gas production platform located in Vermilion Block 315A. Plaintiff claims that the HANNAH C drifted towards the Fieldwood platform prior to plaintiff's transfer, which plaintiff alleges to have contributed to

the subject incident. Michael Broussard, who was Wood Group PSN Inc.'s ("Wood Group") crane operator during the subject personnel basket transfer, purportedly observed the HANNAH C drifting out of position over the course of minutes prior to plaintiff's transfer, though Mr. Broussard declined to communicate such issue to the vessel. Rather, despite being fully aware that the crane boom was not center-positioned over plaintiff's personnel basket load, Mr. Broussard nonetheless decided to lift the crane wire and the personnel basket swung into a cargo wire aboard the HANNAH C.

On April 10, 2018, plaintiff Terry Durr filed his original Complaint ("Original Complaint")[1] against REC and GOL, asserting claims against REC/GOL arising under general maritime law and 33 U.S.C. sec. 905(b) and 33 U.S.C. sec. 933.[2] Among other claims, plaintiff alleged "the acts and failures to act of [REC/GOL]…recklessly and callously endangered the Plaintiff" and that REC/GOL's conduct "has been grossly negligent, malicious, egregious, callous, and…with careless disregard to the safety and wellbeing of Plaintiff."[3]

On April 16, 2018, plaintiff filed his First Amended and Restated Complaint ("First Amended Complaint"),[4] adding Wood Group PSN, Inc. ("Wood Group") as an additional defendant. There, plaintiff reasserted his claims against REC/GOL under general maritime law. Again, plaintiff alleged that the "acts and failures to act of [REC/GOL]…recklessly, callously, and grossly negligently endangered the Plaintiff."[5] Plaintiff further alleged that "[a]ll Defendants have been grossly negligent, malicious, egregious, callous, and they have acted with careless disregard to the safety and wellbeing of Plaintiff."[6]

---

[1] R. Doc. 1.
[2] R. Doc. 1, paras. I and VI - VIII.
[3] R. Doc. 1, para. VIII, p. 4-5.
[4] R. Doc. 4.
[5] R. Doc. 4, para. VII, p. 4.
[6] R. Doc. 4, para. XI, p. 6.

On June 28, 2018, this Honorable Court issued its Scheduling Order requiring amendments to pleadings to be filed no later than July 27, 2018.[7]

After the parties exchanged written discovery requests and responses, deposition discovery commenced. Notably, on December 11, 2018, plaintiff deposed Capt. Michael Crowder, who was the REC captain at the wheel during plaintiff's subject personnel basket transfer. During Capt. Crowder's deposition, he testified that the dynamic positioning system (DPS) on board the M/V HANNAH C at the time of plaintiff's basket transfer was not operational. Capt. Crowder further testified that, even if the DPS had been operational, he would have nonetheless manually controlled the M/V HANNAH C during plaintiff's personnel basket transfer due to the prevailing conditions and circumstances present on the date of the subject incident. On January 28, 2019, plaintiff deposed Michael Broussard, who was Wood Group's crane operator during the subject personnel basket transfer. Mr. Broussard testified that, over the course of approximately two minutes, he observed the HANNAH C drifting out of position, though he declined to communicate the issue to the vessel, testifying that he did not believe that the vessel's movement created a safety issue:

> Q: If you had recognized that the vessel's movement had presented a safety issue, would you have communicated that to the captain?
>
> A: Yes.
>
> …
>
> Q: My question is: Did that movement that you recall of the vessel, did that create a safety issue for the transfer operation?
>
> A: No, sir.[8]

---

[7] *See* R. Doc. 17. Within the Court's amended-pleading deadline, plaintiff filed a Supplemental and Amending Complaint ("Second Amended Complaint") (R. Doc. 21) to add American Club as a defendant as the insurer of REC/GOL.
[8] *See* Deposition of Michael Broussard, p.104, 105, attached as Exhibit A.

3

Despite the fact that Mr. Broussard's most important responsibility was to make sure that the crane remained centered over the personnel basket load,[9] and being fully aware that the crane boom was not center-positioned over plaintiff's basket, Mr. Broussard nonetheless decided to lift the crane wire causing the personnel basket to swing into a cargo wire aboard the HANNAH C.[10]

On February 19, 2019, plaintiff filed a Motion to Continue Trial Date,[11] which according to representations of plaintiff's attorney, was exclusively premised on the fact that plaintiff had recently undergone a discectomy and fusion of L2-3. The surgical procedure, according to the plaintiff, "affect[ed] his vocational and economic outlook, thereby necessitating a continuance."[12] In plaintiff's request for a continuance, his attorney never once mentioned that he would seek to amend the underlying Complaint to add a brand new defendant at the "11th hour" nor did he advise that he would seek to assert purported "additional" allegations against the REC/GOL Defendants regarding punitive damages. Based on such representations (or lack thereof) by plaintiff's attorney, undersigned counsel for REC/GOL did not oppose plaintiff's request for a continuance.

---

[9] Exhibit A (Deposition of Michael Broussard), p. 108.
[10] Exhibit A (Deposition of Michael Broussard), p. 183.
[11] R. Doc. 56.
[12] R. Doc. 56-1, para. III, p. 2.

On February 20, 2019, the Court granted plaintiff's Motion to Continue,[13] and the Court issued a new Scheduling Order, as later amended, with updated pre-trial deadlines and trial date.[14] The Court maintained that the deadline for amendments to pleadings had already expired.[15]

Now, plaintiff has requested leave of this Honorable Court to file a *Supplemental and Amending Complaint* (hereinafter "Proposed Amended Complaint"), for two reasons. First, plaintiff seeks to add Fieldwood Energy Offshore, LLC as an additional defendant. Second, plaintiff purportedly seeks leave of Court to allege "additional" claims against REC/GOL for punitive damages. The REC/GOL Defendants oppose plaintiff's Motion for Leave because plaintiff's Proposed Amended Complaint is futile, untimely, unnecessary and unduly prejudicial to REC/GOL, as detailed below.

---

[13] R. Doc. 60.
[14] *See* R. Doc. 64, 65 and 67. Initially, the Court's Amended Scheduling Order (R. Doc. 64) stated that the deadlines for the production of expert reports by the plaintiff *and* defendants had passed. However, the Court granted plaintiff's Motion to Continue on February 20, 2019, which was one day prior to defendants' original deadline for exchange of defendants' expert reports. Upon being apprised of such discrepancy, the Court issued a corrected Amended Scheduling Order (R. Doc. 65), amending the prior Scheduling Order to allow for the defendants to produce their respective expert reports no later than by October 29, 2019 and further providing that the deadline for plaintiff's expert disclosures had expired. Despite the fact that plaintiff had already produced his liability expert reports prior to his request for continuance, and further relying on plaintiff counsel's representations that his request for a continuance was "exclusively" premised on plaintiff's late-noticed surgical procedure, plaintiff filed a Motion to Correct the Scheduling Order (R. Doc. 66), requesting his own extension of the expert report deadlines. Again, relying on the representations of plaintiff's counsel that his prior request for a continuance was premised exclusively on plaintiff's recent surgical procedure and that a continuance of plaintiff's expert disclosure deadline was required to accommodate plaintiff's ongoing treatment, undersigned counsel did not object to plaintiff's request for a continuance of plaintiff's expert disclosure deadline. In due course, the Court granted plaintiff's Motion to Correct and Amend Scheduling Order (R. Doc. 67), allowing plaintiff an extension until September 29, 2019 by which to produce plaintiff's expert reports.
[15] R. Doc. 65, p. 1.

# LAW AND ANALYSIS

1. **Standard for Review – Leave to Amend.**

This Honorable Court in *Annie Sloan Interiors, Ltd. v. Jolie Design & Décor, Inc.* previously set forth the standard for determining whether to allow for the filing of an amended pleading when the court-ordered deadline to do so had already expired:

> "Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings by consent of the parties or by leave of court. 'The court should freely give leave when justice so requires.' Fed. R. Civ. Proc. 15(a)(2). Thus, the United States Court of Appeals for the Fifth Circuit instructs that the 'district court must possess a 'substantial reason' to deny a request for leave to amend.' *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Nonetheless, 'that generous standard is tempered by the necessary power of a district court to manage a case.' *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 177 (5th Cir. 2016) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). The court may consider numerous factors when deciding whether to grant a motion for leave to amend, including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment.' *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).
>
> To determine whether a complaint is futile, courts 'apply 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'' *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
>
> Where the court ordered deadline for amending pleadings has passed, that schedule 'may be modified' to allow for additional amendments 'only for good cause and with the judge's consent.' Fed. R. Civ. Proc. 16(b)(2); *see S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003) ('We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired.'). When determining whether the movant has shown good cause, the Court considers ''(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.'' *S&W Enterprises*, 315 F.3d at 536 (quoting *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)) (alterations in original)."[16]

---
[16] *Annie Sloan Interiors, Ltd. v. Jolie Design & Decor, Inc.*, No. CV 17-11767, 2018 WL 3455708, at *4 (E.D. La. July 18, 2018)

In sum, a party freely may amend its pleading as a matter of course within the time parameters set forth in Rule 15(a)(1). Once the time limits in Rule 15(a)(1) have expired, Rule 15(a)(2) requires a party to obtain leave of court to amend its pleading, and a showing of "undue delay, bad faith or dilatory motive" or "futility" in allowing for an amended pleading should defeat a request for leave. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Once a court-ordered deadline to amend pleadings has expired (as is the case here), a party must make a greater showing of "good cause" as a condition precedent to obtaining leave of court to amend, pursuant to Rule 16(b)(4), applying the factors set forth in *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).

Here, plaintiff cannot make a showing of the required "good cause" for filing his Proposed Amended Complaint, for two separate and distinct reasons.

First, as a matter of law, plaintiff has no cause of action for punitive damages under the general maritime law or 905(b). As such, plaintiff's Proposed Amended Complaint is futile and his request for leave should therefore be denied.

Second, even if the Court were to conclude that plaintiff has a cause of action for punitive damages, which the REC/GOL Defendants specifically deny, his Proposed Amended Complaint is inexcusably delayed, completely unnecessary and only serves to prejudice the REC/GOL Defendants and therefore plaintiff's Motion for Leave should be denied on that basis alone.

**2. Plaintiff's Proposed Amended Complaint is Futile.**

In Plaintiff's Proposed Amended Complaint, plaintiff seeks to "add" claims against the REC/GOL Defendants for punitive damages under the general maritime law and 33 U.S.C. 905(b). However, not only does 905(b) on its face preclude a claim for punitive damages, but controlling

5th Circuit and United States Supreme Court authority also militate against allowing a 905(b) plaintiff to assert a claim for punitive damages against a vessel owner. As such, plaintiff's proposed "additional" punitive damage claims against the REC/GOL Defendants would be futile, as plaintiff cannot maintain a cause of action for punitive damages. Since plaintiff's punitive damages claims would not be able to succeed under a 12(b)(6) challenge, plaintiff's Motion for Leave should be denied.

In the 2014 case of *McBride v. Estis Well Service, L.L.C.*, the Fifth Circuit held *en banc* that a Jones Act seaman could not recover punitive damages under either the Jones Act or the general maritime law doctrine of unseaworthiness. 768 F.3d 382, 391 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 2310 (2015); *see also Scarborough v. Clemco Industries, Inc.*, 391 F.3d 660, 665-66 (5th Cir. 2004) (holding that a Jones Act seaman, or his survivors, may not recover nonpecuniary damages against either his employer or a non-employer). Multiple Louisiana district courts have affirmed the same conclusion. *See e.g., Bell v. Foster Wheeler Energy Corp.*, No. CV 15-6394, 2017 WL 889074, at *4-6 (E.D. La. Mar. 6, 2017) (finding that seaman recovery is limited to pecuniary damages under general maritime law, whether sought in a wrongful death or survival action); *Wade v. Clemco Indus. Corp.*, No. CV 16-502, 2017 WL 434425, at *5 (E.D. La. Feb. 1, 2017) (Fallon, J.) ("[T]he Fifth Circuit has now made it clear that under both the Jones Act and general maritime law, a seaman's damages against both employers and non-employers are limited to pecuniary losses."); *Lewis v. Noble Drilling Servs., Inc.*, No. CV 15-1018, 2016 WL 3902597, at *3 (E.D. La. July 19, 2016) ("In light of the Supreme Court's and the Filth Circuit's precedents, it is clear a Jones Act seaman or his or her representative cannot recover nonpecuniary…losses for wrongful death under the Jones Act or the general maritime law.").

The Fifth Circuit holding in *McBride* derives from United States Supreme Court precedent. In *Miles v. Apex Marine Corp.*, the Supreme Court determined that under the Jones Act, damages are limited to pecuniary losses. *See* 498 U.S. 19, 111 S.Ct. 317, 325-26 (1990). Therefore, it found that "there is no recovery for loss of society in a Jones Act wrongful death action." *Id*. at 325. The Court further concluded that given the limitation to pecuniary loss under the Jones Act, "there also is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." *Id*. at 326. In *Miles*, the Court also found that under general maritime law, lost future earnings are not recoverable in a survival action, again, grounding its reasoning on the fact that the Jones Act bars such recovery. *Id*. at 327-28. The Court indicated that these holdings were "in accordance with the uniform plan of marine tort law Congress created in the [Death on the High Seas Act] and the Jones Act." *Id*. at 328.[17]

Just as Congress did with the Jones Act, Congress passed 905(b) to displace prior general maritime law. The effect of Congress' enactment of 905(b) should be the same as that which was concluded by the *McBride* court. 905(b) states that "[i]n the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party." In enacting 905(b), Congress allowed a negligence action, and nothing more than a negligence action. "The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be <u>exclusive</u> of all other remedies against the vessel except remedies available under this chapter." (Emphasis added). Congress did not allow a gross negligence action, and gross negligence is – absent statutory exception – a prerequisite for punitive damages. Simply

---

[17] *See also In re Int'l Marine LLC*, No. CV 11-358, 2013 WL 3293677 (E.D. La. June 28, 2013).

put, 905(b) claims do not allow a gross negligence action, i.e. do not allow for recovery of punitive damages.[18]

Here, pursuant to *McBride* and *Miles*, and further considering the plain language and legislative history of 905(b), plaintiff is not entitled to recover non-pecuniary, i.e. punitive, damages against the REC/GOL Defendants. Accordingly, plaintiff's purported "additional" allegations against the REC/GOL Defendants, as proposed in plaintiff's Proposed Amended Complaint, are futile and therefore Motion for Leave should be denied.

### 3. Plaintiff's Request for Leave Fails the *S.W. Enterprises* Four-Factor Test.

Even if the Court finds that plaintiff's Proposed Amended Complaint is not "futile," then plaintiff nonetheless fails to meet the *S.W. Enterprises* four-factor test. When a party seeks to amend a pleading after the expiration of a court-ordered deadline to do so (as is the case here), the moving party must show good cause as to why an amendment should be allowed. The Court should consider: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." S&W Enterprises, 315 F.3d at 536.

As to the first factor, plaintiff discovered months ago (in mid-December 2018) that the M/V HANNAH C did not have DPS capability, yet plaintiff's attorney waited until after plaintiff received a surgical recommendation (mid-February 2019), until after plaintiff's attorney obtained consent from the parties to a trial continuance (mid-February 2019), and until after obtaining the parties consent to an extension of plaintiff's expert report deadlines (early-March 2019) before

---

[18] The historical context of 905(b) further reinforces the intent to preclude recovery of punitive damages. 905(b) was created by Congress in 1972 to overrule the Supreme Court's prior holdings. Before 1972, longshoremen could bring a claim for unseaworthiness against a vessel under *Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85 (1946). 905(b) eliminated such right.

finally requesting leave of court to file his Proposed Amended Complaint. Indeed, plaintiff presents no argument in his Motion for Leave to excuse the dilatory nature of this Motion for Leave. The REC/GOL Defendants respectfully submit that the above-timeline can only suggest that plaintiff's untimeliness in requesting leave of court was tactically disingenuous and in bad faith. Plaintiff's Motion for Leave fails the first factor of the analysis.

The second factor considers the importance of the proposed amended pleading. Here, Plaintiff has already pled claims against the REC/GOL Defendants arising under general maritime law and 905(b) in plaintiff's original and previously filed amended Complaints. As such, if the Court were to find that punitive damages are recoverable, which the REC/GOL Defendants specifically deny, he has already sufficiently pled and preserved such a claim for punitive damages. Review of plaintiff's Original Complaint and First Amended Complaint confirms the same. In plaintiff's Original Complaint, plaintiff alleged, among other claims, that "the acts and failures to act of [REC/GOL]…recklessly and callously endangered the Plaintiff" and that REC/GOL's conduct "has been grossly negligent, malicious, egregious, callous, and…with careless disregard to the safety and wellbeing of Plaintiff."[19] In plaintiff's First Amended Complaint, plaintiff again alleged that the "acts and failures to act of [REC/GOL]…recklessly, callously, and grossly negligently endangered the Plaintiff."[20] Plaintiff further alleged that "[a]ll Defendants have been grossly negligent, malicious, egregious, callous, and they have acted with careless disregard to the safety and wellbeing of Plaintiff."[21] These already-asserted claims arise under the general maritime law and 905(b) and are punitive in nature, thereby making plaintiff's Proposed Amended Complaint redundant and unnecessary. Plaintiff's Motion for Leave fails the second factor of the

---

[19] R. Doc. 1, para. VIII, p. 4-5.
[20] R. Doc. 4, para. VII, p. 4.
[21] R. Doc. 4, para. XI, p. 6.

analysis because it is simply redundant in making allegations that were already asserted. The amendments are thus unnecessary.

The third factor weighs the potential for prejudice if the amendment were allowed. Here, plaintiff's Proposed Amended Complaint, in reality, only serves as an effort to prejudice the REC/GOL Defendants by attempting to circumvent federal evidentiary rules by asserting allegations purportedly supported by plaintiff's self-serving summary of "sworn deposition testimony" and alleged subsequent remedial measures of REC/GOL, neither of which would be admissible at the trial of this matter. Plaintiff would inevitably request that the jury be able to consider his Proposed Amended Complaint when deliberating, and thus REC/GOL Defendants would be severely prejudiced if plaintiff's Proposed Amended Complaint were to be allowed. For example, undersigned counsel refers to the following excerpts from plaintiff's Proposed Amended Complaint,[22] each of which only serve to circumvent evidentiary rules and inflame the jury:

- At para. VI, p. 3: "*According to sworn deposition testimony given on December 11, 2018, by the REC/GOL employee/vessel captain Michael Crowder, who was operating M/V Hannah C during the subject personnel basket transfer…*"

- At para. VI, p. 3: "*Captain Crowder testified that he used the manual stern controls of M/V Hannah C during subject personnel basket lift…*"

- At para. VII, p. 3: "*…according to sworn deposition testimony given on December 11, 2018, by the REC/GOL's employee/vessel captain Michael Crowder…*"

- At para. VII, p.3: "*…documents produced in late January 2019 by REC/GOL, show that REC/GOL did not repair the DPS on M/V Hannah C until November 13, 2018, nearly one year after plaintiff's injury event…at the request of REC/GOL – was done by a sole technician from the DPS manufacturer Kongsberg Maritime, Inc., who fixed the M/V Hannah C DPS system with only 6 hours of labor; a job that…*"

- At para. VIII, p. 4: "*(If DPS is not needed on M/V Hannah C, why did REC/GOL eventually have it repaired?)*"

---

[22] *See* R. Doc. 68-9.

Because plaintiff has already alleged gross negligence and his amendments purporting to summarize deposition testimony are simply duplicative, these requested amendments could only be premised as an attempt to improperly present evidence to prejudice the jury. As such, plaintiff's Proposed Amended Complaint fails the third factor of the *S.W. Enterprises* analysis and such prejudice to REC/GOL could not be cured if the amendments are allowed to be made.

The fourth factor is not implicated, as the Court recently ordered a continuance of the trial date. Trial is currently scheduled to commence on January 27, 2020.

In sum, plaintiff's Motion for Leave to file his Proposed Amended Complaint fails three of the four factors of the *S.W. Enterprises* analysis. Accordingly, even if the Court were to conclude that plaintiff's Proposed Amended Complaint is not "futile," then plaintiff nonetheless fails to meet the *S.W. Enterprises* four-factor test and plaintiff's Motion for Leave should be denied on that basis alone.

## **CONCLUSION**

To the extent that plaintiff requests leave "to assert additional claims against vessel defendants REC Marine Logistics, LLC and GOL, L.L.C," plaintiff's request for leave should be denied for being futile, inexcusably delayed, unnecessary and unduly prejudicial to the REC/GOL Defendants.

At a minimum, even if the Court were to grant plaintiff's Motion for Leave, then REC/GOL respectfully requests that the plaintiff be barred from (1) summarizing and referring to "sworn deposition testimony" of fact witnesses taken to date, and (2) referring to subsequent remedial measures implemented by REC/GOL following the subject personnel basket incident in its

Amended Complaint. To that end, undersigned counsel submits Exhibit B, which is a redlined version of plaintiff's Proposed Amended Complaint that eliminates such references to inadmissible and prejudicial evidence.

Respectfully submitted:

Salvador J. Pusateri, T.A. (#21036)
Michael H. Rodrigue, Jr. (#31306)
PUSATERI, JOHNSTON, GUILLOT & GREENBAUM
1100 Poydras Street
Energy Centre – Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Michael.Rodrigue@pjgglaw.com
ATTORNEYS FOR GOL, LLC and
REC MARINE LOGISTICS, LLC