

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

TERRY DURR                    *   C.A. NO.: 18-CV-3742 M(3)

    Plaintiffs,              *

VERSUS                        *   MAG. JUDGE KNOWLES, III

GOL, L.L.C., et al            *

    Defendants.              *

* * * * * * * * * * * * * * * * * * * * * * *

    The videotaped deposition of MICHAEL BROUSSARD, taken in connection with the captioned cause, pursuant to the following stipulations before CONNIE M. MARKS, Certified Court Reporter, at the offices of Liskow & Lewis, 822 Harding Street, Lafayette, Louisiana, on the 28th day of January, 2019, beginning at 10:10 a.m.

|    |   |                                                                |
|----|---|----------------------------------------------------------------|
| 1  |   | have you ever had an instance where a vessel                   |
| 2  |   | moved so far out of position that you                          |
| 3  |   | communicated that issue to the captain?                        |
| 4  | A | Oh, yes. Yes, sir.                                             |
| 5  | Q | How many times before Mr. Durr's incident did                  |
| 6  |   | that take place?                                               |
| 7  | A | I'd say maybe three or four times.                             |
| 8  | Q | And on those three or four occasions, why did you              |
| 9  |   | -- why did you communicate the issue to the                    |
| 10 |   | captain?                                                       |
| 11 | A | Well, I think every single time it was trying to               |
| 12 |   | actually put personnel on a boat and just the                  |
| 13 |   | boat couldn't hold it still. We couldn't -- you                |
| 14 |   | know, it was -- we just couldn't get together to               |
| 15 |   | -- couldn't hold it. I couldn't -- he didn't --                |
| 16 |   | he couldn't hold it long enough for me to set it               |
| 17 |   | down. It just -- it was -- it wasn't worth...                  |
| 18 | Q | In those prior three or four times you just kind               |
| 19 |   | of generally described, is the reason that you                 |
| 20 |   | communicated the issue to the captain was because              |
| 21 |   | you recognized that this is a safety issue?                    |
| 22 | A | Yes, sir.                                                      |
| 23 | Q | On the day of Mr. Durr's incident, did you ever                |
| 24 |   | communicate to the captain of the HANNAH C that                |
| 25 |   | it had moved out of position?                                  |

1  A    No, sir.
2  Q    If you had recognized that the vessel's movement
3       had presented a safety issue, would you have
4       communicated that to the captain?
5            MS. GAUDET:
6                 Object to --
7  A    Yes.
8            MS. GAUDET:
9                 -- the form.
10 MR. RODRIGUE:
11 Q    Do you believe -- based on your recollection of
12      the transfer incident, do you believe that the
13      vessel's movement created a safety issue?
14           MS. GAUDET:
15                Object to the form, but you can answer.
16 A    Not solely.  I mean --
17 MR. RODRIGUE:
18 Q    What do you mean by that?
19 A    -- in my opinion, that wasn't the only reason why
20      that happened.
21 Q    Let me ask it differently.  You specified already
22      that the vessel, during the operation of --
23      during the transfer operation, moved in some
24      fashion; is that right?
25 A    That's correct.

```
 1         situation?
 2    A    Yes, sir.
 3    Q    And your job remains to make sure that the crane
 4         remained centered over that load?
 5    A    Yes, sir.
 6              MS. GAUDET:
 7                   Object to the form.
 8    MR. RODRIGUE:
 9    Q    Would you consider your most important
10         responsibility as a crane operator is to make
11         sure that the crane remains centered over the
12         load?
13    A    Yes.
14    Q    And why is that?
15    A    So where when -- when I pick up, the load doesn't
16         go where it's not supposed to.  Somebody could
17         fall in the water or get crushed, you know, a
18         bunch of different scenarios.
19    Q    We talked quite a bit about the cargo and load of
20         the vessel.  I'm not talking about load -- let me
21         rephrase that.
22              Mr. Gee here discussed that there was --
23         asked you if there was cargo present on the
24         vessel on the day of Mr. Durr's transfer.
25    A    Yes, sir.
```

```
 1   A      Please tell me y'all done.
 2               MR. RODRIGUE:
 3                   I have another -- I do have a follow-up
 4          question.
 5               MS. GAUDET:
 6                   We're close, I promise.
 7   BY MR. RODRIGUE:
 8   Q      Earlier I asked you similar questions.  I asked
 9          you about whether or not you knew, before the
10          lift, that the load was not centered under the
11          crane.  And you said yes; correct?
12   A      Yes, correct.
13   Q      I also asked you, having known that and sitting
14          here today, I asked you should you have stopped
15          the work operation, and you said yes?
16   A      Correct.
17   Q      And you stand by that today; correct?
18   A      I still stand by that, yes.
19               MR. RODRIGUE:
20                   That's all the questions I have.
21               MS. GAUDET:
22                   Does anybody listening in have
23          anything?  Still there?
24               MS. JONES:
25                   Not me.
```



EXHIBIT
B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TERRY DURR | CIVIL ACTION NO. 18-CV-3742 M(1) |
| VERSUS | JUDGE BARRY W. ASHE |
| GOL, L.L.C., *et al* | MAG. JUDGE JANIS VAN MEERVELD |

## SUPPLEMENTAL AND AMENDING COMPLAINT

Now comes plaintiff, who respectfully supplements and amends his original complaint to plead additional assertions and damage claims against vessel defendants, REC Marine Logistics, LLC ("REC") and GOL, L.L.C. ("GOL"); and to add as an additional defendant, Fieldwood Energy Offshore LLC.

I.

Fieldwood Energy Offshore LLC ("Fieldwood"), made defendant herein, is a foreign company, with a registered office in the State of Louisiana, at 8550 United Plaza Building II, Ste. 305, Baton Rouge, LA 70809.

II.

Claims made against Fieldwood herein are made under the Outer Continental Shelf Lands Act, 43 U.S.C.A. §1331, *et seq.*, applying substantive law of Louisiana, as the injury incident subject herein happened in connection with Fieldwood platform VR315A, located on the outer continental shelf off the coast of Louisiana, in Vermilion block 315.

III.

The claims herein made against Fieldwood are being made pursuant to information learned in deposition and documentary discovery on and after December 11, 2018, so the Louisiana doctrine of *contra non valentem* applies to claims made herein by plaintiff against Fieldwood, relative to any statutory time limit applicable to plaintiff's claims against Fieldwood. Further, Fieldwood is liable unto plaintiff jointly, severally, and concurrently, along with other defendants in this case.

IV.

Additional allegations and claims made by plaintiff herein against vessel owner/operator defendants REC and GOL are pled under general maritime law, 28 U.S.C.A. §1333(1).

V.

At time of the December 17, 2017 injury incident subject herein, which is described in plaintiff's original, and supplemental and amending complaints, M/V *Hannah C*, a relatively new, state-of-the-art 150' vessel manufactured in 2006, had installed as original equipment a Dynamic Positioning System ("DPS"), which is navigational technology that facilitates work boats such as M/V *Hannah C* to remain steady and still in sea water during personnel basket onloading maneuvers such as the event at time of plaintiff's injury subject herein; a functional vessel DPS makes such vessel-to-platform maneuvers safer because having a boat that is not unsafely moving around in seas during such personnel basket onloading maneuvers makes it more feasible for the platform's crane operator to maintain the crane's fast line at, or close to, 180° straight down to the subject personnel basket, so that when the crane operator lifts up on the personnel basket by retracting the crane's fast line, the personnel basket with passenger(s), such as plaintiff in this case, are lifted straight up; a vertical lift prevents a personnel basket - - when lifted from deck of vessel

2

- - from swinging laterally and/or diagonally; and in this case, the personnel basket was lifted when Fieldwood's crane's fast line was far from 180° straight down to the subject personnel basket, "off center", causing the personnel basket containing plaintiff to swing swiftly and violently toward the bow of M/V *Hannah C*, causing plaintiff's body to strike a cargo chain 20-25 feet toward bow, relative to where the personnel basket had been lifted off of vessel's deck, injuring plaintiff's low back and left knee. Plaintiff's injury has been caused due to lack of use of DPS system on M/V *Hannah C* at time of plaintiff's injury.

VI.

~~According to sworn deposition testimony given on December 11, 2018, by the REC/GOL employee/vessel captain Michael Crowder, who was operating M/V Hannah C during the subject personnel basket transfer,~~ the originally installed DPS equipment on M/V *Hannah C* was inoperative; ~~Captain Crowder testified that he used the manual stern controls of M/V Hannah C during subject personnel basket lift;~~ plaintiff asserts that an operative DPS on M/V *Hannah C* would have allowed for a safer personnel basket lift on date of plaintiff's injury.

VII.

Specifically, the DPS on M/V *Hannah C*, ~~according to sworn deposition testimony given on December 11, 2018, by the REC/GOL's employee/vessel captain Michael Crowder,~~ had been inoperative for 1 year before plaintiff's injury event on December 17, 2017; and ~~documents produced in late January 2019 by REC/GOL, show that REC/GOL did not repair the DPS on M/V Hannah C until November 13, 2018, nearly one year after plaintiff's injury event; this~~ DPS repair job ~~— at the request of REC/GOL — was done by a sole technician from the DPS manufacturer Kongsberg Maritime, Inc., who fixed the M/V Hannah C DPS system with only 6 hours of labor;~~ ~~a job that~~ easily could have been ordered by REC/GOL's land based management well in advance

3

of plaintiff's injury; specifically, this relatively inexpensive and minor DPS repair work on M/V *Hannah C* could easily have been done during one of M/V *Hannah C's* routine trips to shore to drop off or take on personnel, equipment, water, supplies and/or fuel.

VIII.

From a cost-benefit standpoint, REC/GOL's management's decision, prior to December 17, 2017, to refrain from having M/V *Hannah C's* DPS system repaired, knowing that a frequent activity of M/V *Hannah C* had been to participate in personnel basket transfers from vessel to offshore structures such as Fieldwood platform VR315A, was intentionally and incredibly irresponsible, indifferent, unsafe, malicious, grossly negligent, dangerous, callous and unprofessional. ~~(If DPS is not needed on M/V Hannah C, why did REC/GOL eventually have it repaired?)~~ REC/GOL's intentional refusal to repair M/V *Hannah C's* DPS system before plaintiff's injury event is causally related to plaintiff's injuries and damages, and therefore entitles plaintiff to recover punitive damages from REC/GOL, in addition to compensatory damages claimed already.

IX.

The M/V *Hannah C* had serviced the incident/injury production platform, Fieldwood VR315A, for a time period in excess of one year before, and including, the date/time of plaintiff's injury event on December 17, 2017; and Fieldwood has been empowered, and required, to control safety aspects of personnel basket onloading maneuvers such as the personnel basket lift subject herein; Fieldwood authored, and required the completion of, the particular Job Safety Analysis ("JSA") for the subject personnel basket lift, setting out the safety concepts to be heeded by vessel captains, deckhands, and crane operators participating in the personnel basket onloading maneuver subject herein; and Fieldwood, pursuant to work records and personnel basket transfer JSA's

4

submitted to Fieldwood, for the one-year period leading up to and including plaintiff's injury event subject herein, on December 17, 2017, in addition to observations by its onsite field personnel, had knowledge of frequent and multiple personnel basket vessel-to-platform maneuvers performed at production platform Fieldwood VR315A, as well as other Fieldwood platforms in the same production field, involving M/V *Hannah C*, and other vessels provided by vessel defendants REC/GOL.

X.

Fieldwood, as a sophisticated operator and manager of offshore oil and gas platforms, including Fieldwood VR315A, which Fieldwood actively managed, deviated from industry safety standards; Fieldwood should have ensured that the DPS on M/V *Hannah C* was operational and being used by vessel operators of M/V *Hannah C* during the one-year period leading up to, and including, the date and time of plaintiff's December 17, 2017 injury event, during personnel basket transfers from work boats such as M/V *Hannah C*, to Fieldwood's offshore platforms including VR315A; therefore Fieldwood is at fault for intentional and negligent acts and omissions under Louisiana substantive law, LSA-C.C. art. 2315, 2316, 2317, 2320 and 2324, and these acts and omissions have been proximate and contributing causes of the mechanics of plaintiff's injury event, and plaintiff's resulting injuries and damages.

XI.

Plaintiff is entitled to recover from Fieldwood compensatory damages set out in plaintiff's original, and supplemental and amending complaints, for an amount reasonable in the premises.

XII.

Plaintiff is entitled to recover punitive damages under general maritime law from REC/GOL, for an appropriate amount reasonable in the premises, no less than $3 million, in addition to compensatory damages pled already.

XIII.

Plaintiff adopts and incorporates herein all allegations and claims made in his original, and supplemental and amending complaints; and reiterates his request for jury trial.

Wherefore, after due proceedings be had, Plaintiff prays that judgment be entered in his favor herein, for damages reasonable in the premises of claims made herein, to be paid by Defendants, who are liable jointly, severally and concurrently unto plaintiff, along with all recoverable costs and judicial interest.

Respectfully submitted,

**WILLIAM GEE, LTD.**

*s/ William Gee*
WILLIAM GEE
Louisiana State Bar No. 14282
PINHOOK TOWER
2014 West Pinhook Road, Suite 501
Lafayette, LA 70508
Telephone: (337) 222-2222
Facsimile: (337) 289-0809
William@WilliamGee.com

*Attorney for Plaintiff*