UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRY DURR

VERSUS

GOL, LLC, REC MARINE
LOGISTICS, LLC AND
WOOD GROUP PSN, INC.

CIVIL ACTION

NO. 18-3742

SECTION M (1)

## ORDER & REASONS

Before the Court are two motions to dismiss filed by third-party defendant First Mercury Insurance Company ("FMIC").[1] Defendants and third-party plaintiffs Wood Group PSN, Inc. ("Wood Group"), REC Marine Logistics, LLC ("REC"), and GOL, LLC ("GOL") respond in opposition,[2] and FMIC replies in further support of its motions.[3] Also before the Court is a motion to dismiss filed by third-party defendants Certain Underwriters at Lloyd's and Navigator's Insurance Company (collectively, "Certain Excess Underwriters"),[4] to which Wood Group responds in opposition.[5] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

On December 17, 2017, plaintiff Terry Durr ("Durr"), who was employed by third-party defendant Linear Controls, Inc. ("Linear"), was injured during a personnel-basket transfer from the *M/V Hannah C* ("*Hannah C*"), a vessel owned and operated by REC/GOL, to a fixed platform affixed to the Outer Continental Shelf ("OCS") off the coast of Louisiana.[6] Defendant

---

[1] R. Docs. 34 & 48.
[2] R. Docs. 40, 41, 50 & 92.
[3] R. Docs. 45 & 54.
[4] R. Doc. 101.
[5] R. Doc. 104.
[6] R. Docs. 1, 26 & 38.

Fieldwood Energy, LLC ("Fieldwood") owned the platform, and contracted with Wood Group to operate it.[7]

At the time of the accident, the *Hannah C* was transporting Durr to the Fieldwood platform.[8]  Durr boarded a personnel-transfer basket that was to be lifted onto the platform from the deck of the vessel by a crane located on the platform and operated by a Wood Group employee.[9]  Durr alleges that, due to rough seas, the *Hannah C*'s master lost control of the vessel, causing it to travel toward the platform and, through a sequence of events, resulted in the crane striking a chain holding the vessel's cargo, which caused Durr's injuries.[10]  Durr alleges that the *Hannah C*'s deckhand did not hold the personnel-transfer basket's tagline and the crane operator failed to abort the lift.[11]  Durr sued REC, GOL, Wood Group, and Fieldwood alleging that they are all liable for his injuries due to their negligence.[12]  Durr also sued REC/GOL's insurer, American Steamship Owners Mutual Protection and Indemnity Association, Inc.[13]

Wood Group and REC/GOL filed third-party complaints against Linear; its primary general liability insurer, FMIC; and its excess insurers, Atlantic Specialty Insurance Company, Navigators Insurance Company, and Underwriters at Lloyd's, London subscribing to Policy No. TRC 407411 (collectively, "Linear's excess insurers").[14]  Wood Group and REC/GOL allege that Linear owes them defense and indemnity through the operation of the contracts among the parties involved in the accident.[15]

Wood Group alleges that, at the time of the accident, it was working as a contractor to Fieldwood pursuant to a January 1, 2014 master services contract ("Wood Group/Fieldwood

---

[7] R. Docs. 26, 38 & 81.
[8] R. Doc. 4.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] R. Docs. 1, 4 & 81.
[13] R. Doc. 21.
[14] R. Docs. 26 & 38.
[15] *Id.*

MSC"), and Linear was working as a contractor to Fieldwood pursuant to a November 1, 2013 master services contract ("Linear/Fieldwood MSC").[16]  Wood Group alleges that the Wood Group/Fieldwood MSC and the Linear/Fieldwood MSC had identical cross-indemnity-and-insurance provisions by which Linear agreed to defend and indemnify Wood Group from injury claims made by Linear's employees.[17]

Wood Group further alleges that the Linear/Fieldwood MSC required Linear to support its indemnity obligation to Wood Group with insurance for Wood Group's express benefit, and to offer Fieldwood the option of paying *Marcel* premiums to Linear's insurers for the purpose of extending all of Linear' insurance policies to include coverage for Linear's indemnification obligations required by the MSCs.[18]  As a result, Linear's insurance broker, Howard Risk Advisors ("Howard Risk"), sent Fieldwood an October 13, 2017 invoice in the amount of $22,519.94 for the *Marcel* premiums, which Fieldwood paid on November 3, 2017.[19]  Wood Group contends that, pursuant to the terms of the MSCs, Linear is obligated to defend and indemnify Wood Group from Durr's claims; and, by Fieldwood's payment of the *Marcel* premiums, Wood Group is entitled to coverage and defense provided by FMIC and Linear's excess insurers as an insured party under those policies.[20]

REC/GOL's allegations against Linear and its insurers are substantially like those asserted by Wood Group.  REC/GOL allege that, at the time of the accident, Kilgore Marine Services, LLC ("Kilgore") was working as a contractor to Fieldwood pursuant to a January 1, 2014 master time charter agreement ("Kilgore/Fieldwood MTCA"), and Kilgore brokered the *Hannah C* from REC/GOL to Fieldwood pursuant to the Kilgore/Fieldwood MTCA.[21] REC/GOL allege that the Linear/Fieldwood MSC and the Kilgore/Fieldwood MTCA had

---

[16] R. Doc. 26.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] R. Doc. 38.

identical cross-indemnity-and-insurance provisions by which Linear agreed to defend and indemnify REC/GOL from injury claims made by Linear's employees.[22] REC/GOL specifically allege that Linear was required to provide them with defense and indemnity as third-party contractors or members of the third-party contractor group as defined in section 13(a)(v) of the Linear/Fieldwood MSC and section 12(A)(vi) of the Kilgore/Fieldwood MTCA.[23]

REC/GOL further allege that the Linear/Fieldwood MSC required Linear to support its indemnity obligation to REC/GOL with insurance for their express benefit, and to offer Fieldwood the option of paying *Marcel* premiums to Linear's insurers for the purpose of extending all of Linear' insurance policies to include coverage for Linear's indemnification obligations required by the Linear/Fieldwood MSC and Kilgore/Fieldwood MTCA.[24] REC/GOL contend that, pursuant to the terms of the MSC and MTCA, Linear is obligated to defend and indemnify them from Durr's claims; and by Fieldwood's November 3, 2017 payment of the *Marcel* premiums to Howard Risk, they are entitled to coverage and defense provided by FMIC and Linear's excess insurers as an insured party under those policies.[25]

Additionally, if FMIC is deemed not to insure Wood Group and REC/GOL, Wood Group and REC/GOL assert breach-of-contract claims against Linear for failure to honor its insurance-procurement obligations.[26] Finally, Wood Group and REC/GOL seek recovery of penalties, costs, and attorney's fees to the extent that the third-party defendants refuse to provide insurance coverage to them.[27]

## II.    PENDING MOTIONS

FMIC and Certain Excess Underwriters filed the instant motions to dismiss Wood Group and REC/GOL's third-party claims arguing that the contractual indemnity-and-insurance

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] R. Docs. 26 & 38.
[27] *Id.*

provisions are void by operation of the Louisiana Oil Field Indemnity Act ("LOIA"), La. R.S. 9:2780, *et seq.*, and that the exception of paying a *Marcel* premium does not apply.[28] Thus, FMIC and Certain Excess Underwriters argue that the third-party plaintiffs did not – and cannot – state claims for relief against them because it is undisputed that neither Wood Group nor REC/GOL paid the *Marcel* premiums on their own behalves, they are not named as insureds in the policy, and they are not additional insureds.[29] FMIC and Certain Excess Underwriters argue that Wood Group and REC/GOL are not part of Fieldwood's "Company Group," as that term is defined in the Linear/Fieldwood MSC, but rather are third-party contractors for which Linear is not obligated to provide indemnity and insurance by operation of the LOIA.[30]

Wood Group and REC/GOL argue that they have stated sufficient facts in their third-party complaints to allege that they are additional insureds under the policies as Fieldwood's invitees for purposes of the "Company Group" designation in the Linear/Fieldwood MSC.[31] Wood Group and REC/GOL also argue that they are "Third Party Contractors" entitled to indemnity-and-insurance coverage under the Linear/Fieldwood MSC.[32]

## III.    LAW & ANALYSIS

### A.    Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

---

[28] R. Doc. 34-1 at 7-9; R. Doc. 48-1 at 6-8; R. Doc. 101-1 at 9-18.
[29] *Id.*
[30] R. Doc. 45 at 2-3; R. Doc. 101-1 at 9-18.
[31] R. Doc. 41 at 4-10 & R. Doc. 50 at 9-15.
[32] R. Doc. 41 at 10-12 & R. Doc. 50 at 4-9.

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely

granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  A court may also take judicial notice of certain matters, including public records and government websites.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005).  Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## B. Applicable Law

The Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*, contains a choice-of-law provision that provides, in pertinent part:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State ... .

> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now

in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ... .

43 U.S.C. § 1333(a).

There are three criteria that must be met for an adjacent state's law to apply as surrogate federal law under the OCSLA. *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc*., 895 F.2d 1043, 1047 (5th Cir. 1990) ("the *PLT* test"). First, the controversy must arise on a situs covered by the OCSLA, namely, the subsoil, seabed, or an artificial structure permanently or temporarily attached thereto. *Id.* Second, "[f]ederal maritime law must not apply of its own force." *Id.* Third, the applicable state law must not be inconsistent with federal law. *Id.*

A claim for indemnity is based in contract, not tort. *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009). Thus, the location of the tort is immaterial to the choice-of-law analysis for contractual indemnity claims. *Id.* Rather, courts "apply a focus-of-the-contract test and say that a contractual dispute – the 'controversy' under the first condition of the *PLT* test – arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses." *Id.*

FMIC and Certain Excess Underwriters argue that, pursuant to the OCSLA, Louisiana law applies to interpret the insurance-and-indemnity provisions at issue, and the LOIA invalidates those contractual provisions.[33] Citing *Grand Isle Shipyard*, Wood Group agrees that Louisiana law applies to the Wood Group/Fieldwood MSC and the Linear/Fieldwood MSC because those contracts were for the purpose of providing personnel to work on a platform

---

[33] R. Docs. 34, 48 & 101. Section 26 of the Linear/Fieldwood MSC and the Wood Group/Fieldwood MSC contain choice-of-law provisions that call for the application of maritime law, Texas state law, or the law of the jurisdiction in which the work was performed. R. Doc. 26-3 at 12; R. Doc. 26-4 at 13-14. Similarly, section 25 of the Kilgore/Fieldwood MTCA provides for the application of the general maritime law of the United States or Texas state law. R. Doc. 38-3 at 15. However, "the presence of a choice of law provision ... does not decide the issue, as case after case holds that the parties' contractual choice of law does not override congressional intent as expressed in the Outer Continental Shelf Lands Act (OCSLA)." *Gulf Crane Servs., Inc. v. Blue Fin Servs., LLC*, 2019 WL 1434436, at *3 n.1 (S.D. Tex. Apr. 1, 2019) (citing *In re Deepwater Horizon*, 745 F.3d 157, 165 n.7 (5th Cir. 2014); *Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 283 n.2 (5th Cir. 2009)).

affixed to the OCS off the coast of Louisiana.[34]  REC/GOL recognize that Louisiana law might apply to the Kilgore/Fieldwood MTCA and the Linear/Fieldwood MSC.[35]  However, the issue is less clear because the Kilgore/Fieldwood MTCA was for the procurement of vessels to transport personnel to the platform.  Thus, the contracts call for work on the seas and the platform.  Neither FMIC nor REC/GOL examine the choice-of-law analysis in their memoranda.[36]  Rather, both sides present arguments regarding the effects of the LOIA if Louisiana law indeed applies.[37]

### C.  The LOIA and *Marcel* Premiums

The LOIA provides, in pertinent part:

> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La. R.S. 9:2780(B).

The statute was enacted to prevent "an inequity foisted on certain contractors and their employees by the defense and indemnity provisions ... contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals ... to the extent those provisions apply to death or bodily injury to persons."  *Id.* 9:2780(A).  The Louisiana legislature intended "to declare null and void and against public policy of the state of Louisiana" any such provision.  *Id.*  The LOIA also applies to insurance coverage procured by the contractor:

> Any provision in any agreement arising out of the operations, services, or activities [covered by the LOIA] which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection

---

[34] R. Doc. 41 at 4.
[35] R. Doc. 50 at 5.
[36] R. Docs. 48, 50 & 54.
[37] *Id.*

which would frustrate or circumvent the prohibitions of [the LOIA], shall be null and void and of no force and effect.

*Id.* 9:2780(G).    Applying subsection G, "courts generally hold that contractual provisions requiring the contractor to extend its insurance coverage to cover the principal's acts of negligence or fault are void under the LOIA because these insurance arrangements frustrate the purpose of the Act." *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 481 (5th Cir. 2002) (citations omitted).    However, in *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994), the Fifth Circuit recognized an exception to this rule finding that, "when the principal pays the entire cost of its own insurance coverage by securing an endorsement naming it as an insured in the contract or policy, the purposes of the LOIA are not frustrated, and the insurance coverage is valid and enforceable." *Rogers*, 308 F.3d at 481 (citing *Marcel,* 11 F.3d at 569-70).

### D. Contractual Insurance and Indemnity

"A contract is interpreted by a determination of the common intent of the parties, giving the contractual words their generally prevailing meaning." *Franklin v. Fountain Grp. Adjusters, L.L.C.*, 249 So. 3d 84, 90 (La. App. 2018) (citing La. Civ. Code arts. 2045 & 2047).    "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."    La. Civ. Code art. 2046.    "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as whole." *Id.* art. 2050.    "A contract has the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom." *Guidry v. USAgencies Cas. Ins. Co.*, 213 So. 3d 406, 418 (La. App. 2017).

Under section 13(b)(i) of the Linear/Fieldwood MSC, Linear agreed "to release, indemnify, protect, defend and hold harmless Company Group from and against any and all

Claims for … injury, illness or death of any" Linear employee.[38]  Fieldwood is the "Company"

referred to in the contract, and "Company Group" is defined at section 13(a)(ii) as:

> [Fieldwood] and its parent, affiliates and subsidiary companies, co-lessees, co-owners, partners, joint venturers, together with its and all of their respective officers, directors, employees, in-house legal counsel, agents, representatives, insurers and ***invitees*** and the respective successors, spouses, relatives, dependents, heirs and estate of any of the foregoing.[39]

Further, pursuant to section 13(f)(i), Linear agreed to "release, indemnify, protect, defend

and hold harmless … Third Party Contractor(s) … from and against any and all Claims for …

injury, illness or death of any" Linear employee, to the extent that Fieldwood's "Third Party

Contractor(s) execute cross indemnification and waivers substantially similar to those contained

in" the Linear/Fieldwood MSC.[40]  "Third Party Contractor" is defined in section 13(a)(v) as "any

other contractor (other than any member of [Linear's] Contractor Group) used or employed by

[Fieldwood] in connection with the Work."[41]  Moreover, section 13(a)(vi) defines "Third Party

Contractor Group" as:

> Third Party Contractor and its parent, affiliates and subsidiary companies, its and their respective subcontractors of any tier, together with its and all of their respective officers, directors, employees, in-house legal counsel, agents, representatives, insurers and invitees and the respective successors, spouses, relatives, dependents, heirs and estate of any of the foregoing.

Linear agreed, in section 14(b), that all of its insurance policies, "other than worker's

compensation policies, shall include Company Group as additional insureds for obligations

undertaken and liabilities assumed by [Linear] under" the Linear/Fieldwood MSC.[42]  To avoid

---

[38] R. Doc. 26-3 at 6-7; *see also* R. Doc. 26-4 at 7, the Wood Group/Fieldwood MSC.

[39] R. Doc. 26-3 at 6 (emphasis added); *see also* R. Doc. 26-4 at 6, the Wood Group/Fieldwood MSC.

[40] R. Doc. 26-3 at 8.  It is undisputed that the Wood Group/Fieldwood MSC and the Kilgore/Fieldwood MTCA have the required cross-indemnification clauses.  Section 13(b)(i) of the Wood Group/Fieldwood MSC is identical to section 13(b)(i) of the Linear/Fieldwood MSC.  R. Doc. 26-4 at 7-8.  Further, section 12(b)(i) of the Kilgore/Fieldwood MTCA requires Kilgore to "release, indemnify, protect, defend and hold harmless Charterer Group from and against any and all claims arising out of or related to … injury, illness or death of any member of Owner Group."  R. Doc. 38-3 at 9-10.  Under the Kilgore/Fieldwood MTCA, "Charterer Group" includes Fieldwood and its invitees, *id.* at 1 & 9, and "Owner Group" includes Kilgore and its subcontractors, such as REC/GOL.  *Id.*

[41] R. Doc. 26-3 at 6.

[42] *Id.* at 9; *see also* R. Doc. 26-4 at 10, the Wood Group/Fieldwood MSC.

the application of the LOIA, Exhibit E to the Linear/Fieldwood MSC contains "Louisiana Specific Provisions" that permit Linear and Fieldwood to "pay to each other's insurer the premium required by their respective insurers or their insurer's agents or authorized representatives to extend all of their insurance policies to include coverage for [each other's] respective indemnities as required by" the contract.[43]  The parties "expressly acknowledged and agreed" that the "Louisiana Specific Provisions" were "intended to comply with the provisions [of] *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994), and … shall be interpreted in such a manner as to comply therewith."[44]

It is undisputed that Howard Risk sent Fieldwood an invoice for the *Marcel* premiums in the amount of $22,519.94 to add "Fieldwood Energy, LLC and Company Group" as an additional insured on Linear's general liability and excess insurance policies.[45]  It is also undisputed that Fieldwood paid the invoice.[46]  Thus, it is undisputed Fieldwood is covered by Linear's general liability and excess insurance policies as an additional insured.  The question raised by FMIC and Certain Excess Underwriters' motions to dismiss is whether Fieldwood's payment of the *Marcel* premiums extends that additional insured coverage to Fieldwood's contractors, Wood Group and REC/GOL.[47]  FMIC and Certain Excess Underwriters argue that only Fieldwood is covered by that payment and that Wood Group and REC/GOL cannot benefit from the coverage because they did not pay any portion of the *Marcel* premiums; thus, Wood Group and REC/GOL cannot state any claims against them for defense and indemnity under Linear's policy.[48]

---

[43] R. Doc. 26-3 at 32.  The Wood Group/Fieldwood MSC also contains the same "Exhibit E" with "Louisiana Specific Provisions."  R. Doc. 26-4 at 34.
[44] R. Doc. 26-3 at 32.
[45] R. Doc. 26-5.
[46] R. Doc. 26-6.
[47] R. Docs. 34, 48 & 101.
[48] *Id.*

Wood Group contends that it has stated a plausible claim for relief under the policies because it is covered as part of the Fieldwood "Company Group" as Fieldwood's "invitee."[49] The Linear/Fieldwood MSC does not define "invitee."[50]  When a contract does not define "invitee," courts employ the definition articulated in *Blanks v. Murco Drilling Corporation*, where the Fifth Circuit defined "invitee" as "a person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage." *Brown v. Sea Mar Mgmt., LLC*, 288 F. App'x 922, 924 (5th Cir. 2008) (quoting *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 894 (5th Cir. 1985)).  Wood Group alleges that it fits this definition of invitee because it was Fieldwood's contractor and Wood Group's employees were on the platform at Fieldwood's express invitation for the mutual financial benefit of both companies.[51]

REC/GOL also argue that they are Fieldwood's "invitees" and thus part of the "Company Group."[52]  They contend that the "premises" was the worksite in the Vermillion Block 315 area of the Gulf of Mexico, and that there are factual questions regarding whether Fieldwood controlled the worksite where the *Hannah C* was located at the time of the accident, including whether Fieldwood holds a lease of that block, owns the platform, or has the right to prevent vessels or other crafts from coming onto its lease area or near its platforms.[53]

FMIC and Certain Excess Underwriters, citing *Knox v. Bisso Marine, LLC*, 2017 WL 2098876 (E.D. La. May 15, 2017), argue that neither Wood Group nor REC/GOL is an "invitee" under the Linear/Fieldwood MSC because neither is a part of Fieldwood's corporate structure.[54] In *Knox*, the district court examined the definition of "Contractor Group" in a master subcontractor agreement (the "Bisso/Dawn MSA") between Bisso Marine, LLC ("Bisso") and

---

[49] R. Doc. 41 at 5-10; R. Doc. 104 at 5-11.
[50] *See* R. Doc. 26-3.
[51] R. Doc. 41 at 6-7.
[52] R. Doc. 50 at 10-15.
[53] *Id.* at 11-15.
[54] R. Doc. 45 at 2-3; R. Doc. 54 at 2 & 4-5; R. Doc. 101-1 at 12-13.

Dawn Services, LLC ("Dawn") to determine if REC Marine Logistics, LLC ("REC Marine"), which was Bisso's subcontractor through Kilgore to provide a vessel to Bisso, was a member of Bisso's "Contractor Group" so as to require Dawn to indemnify REC Marine. *Id.* at *2. The Bisso/Dawn MSA defined "Contractor Group" as:

> [Bisso] and its subsidiary, affiliated companies, co-venturers, partners, joint venturers, owners, stockholders, representatives, and Customer (and anyone to whom Customer contractually requires indemnity or insurance) as well as the officers, directors, employees, agents, assigns, ***invitees***, and insurers of all of the foregoing ....

*Id.* (emphasis in original). The district court was "unpersuaded that REC [Marine] ha[d] established as a matter of law that it was Bisso's invitee under the circumstances of [the] case and in light of the definition of Contractor Group found in the [Bisso/Dawn MSA]." *Id.* The court noted that "'invitee' [was] one of several enumerated parties that constitute[d] the Contractor Group but subcontractors [were] not included in the list," and the other parties listed were "closely related to Bisso if not actually part of Bisso's corporate structure." *Id.* Thus, the court found that it would "seem rather anomalous" to include REC Marine in the "Contractor Group" because it was not a direct subcontractor of Bisso and the contract did not suggest that Dawn intended to indemnify "all of the numerous subcontractors that performed work for Bisso," in addition to "the Bisso corporate family." *Id.* Further, the *Knox* court noted that REC Marine provided a vessel to Bisso through Kilgore and "the [c]ourt would have to conclude that the Gulf of Mexico (or at least some part of it) was a 'premises' that Bisso 'occupied' before it invited REC [Marine] to join the party," which was "awkward" for the purpose of "conceptualiz[ing] REC [Marine] as an invitee." *Id.* at *3. To that end, the district court found that the term "invitee" entails more than "being in the Gulf simply to perform work on behalf of Bisso." *Id.*

In affirming the district court's decision, the Fifth Circuit stated that "there [were] no genuine disputes of material fact, and REC [Marine]'s claim fail[ed], essentially for the reasons

stated by the district court in its well-reasoned order." *Knox v. REC Marine Logistics, L.L.C.*, 716 F. App'x 370, 372 (5th Cir. 2018). The Fifth Circuit highlighted the district court's conclusion that the Gulf, or a portion of it, was not a "premises" occupied by Bisso, but did not discuss the district court's interpretation of the Bisso/Dawn MSA's definition of "Contractor Group." *Id.* at 371-72. Thus, the *Knox* case cannot be cited for the proposition that an "invitee" in a similar contractual provision must be part of the relevant company's corporate structure.

Indeed, in *Grogan v. W & T Offshore, Inc.*, 812 F.3d 376 (5th Cir. 2016), the Fifth Circuit examined usage of the term "invitee" in a master service contract's definitions of company and contractor groups, and found that the invitee did not need to be part of the relevant corporate structure. W & T Offshore, Inc. ("W & T") and Triton Diving Service ("Triton") had a master service contract (the "W & T/Triton MSC") under which Triton agreed to work on an offshore pipeline recommissioning project for W & T. *Id.* at 377. Part of that work was performed from the *Triton Achiever*, a dive support vessel operated by Triton. *Id.* W & T also had a contract with Tiger Safety ("Tiger") for that same project. *Id.* Tiger's employee, Jakarta Grogan ("Grogan"), was injured aboard the *Triton Achiever* and sued W & T and Triton. *Id.* at 378. W & T and Triton filed cross-claims against each other for indemnity and defense of Grogan's claims. *Id.*

Under the W & T/Triton MSC, "W & T had agreed to indemnify Triton for personal injury claims brought by members of the 'W & T Group,' and Triton had agreed to indemnify W & T from personal injury claims brought by members of the 'Contractor Group.'" *Id.* The contract defined the groups as follows:

> 1.1.2 "Contractor Group" shall mean: Contractor, its parent, subsidiary and affiliated companies, and their respective parents, subsidiary and affiliated companies, and all of their respective officers, directors, representatives, employees *and invitees on the Work sites* and insurers of all of the foregoing.

> 1.1.3 "W & T Group" shall mean: W & T, its parent, subsidiary and affiliated or related companies, its and their working interest owners, co-lessees, co-owners,

partners, farmors, farmees, joint operators, and joint venturers, if any, and all of their respective officers, directors, representatives, employees *and invitees on the Work sites* and insurers of all of the foregoing.

*Id.* (emphasis in original).

W & T and Triton both claimed the right to indemnification from each other under these contractual provisions, arguing that Grogan was the other party's invitee. *Id.* The Fifth Circuit applied the *Blanks* definition of "invitee" and found that Grogan was W & T's invitee. *Id.* at 378-82. Importantly, the Fifth Circuit did not hold that Grogan could be neither W & T's nor Triton's invitee because he was not part of either party's corporate structure.

Hence, Wood Group has stated a plausible claim that it was Fieldwood's "invitee," and thus part of Fieldwood's "Company Group" that is entitled to insurance and indemnity under the Linear/Fieldwood MSC. The parties have not cited, and the Court's independent research has not revealed, any case that holds that a third-party is prohibited from benefitting from someone else's payment of the *Marcel* premium on behalf of itself and the "Company Group," and it is undisputed that indemnitor (Linear) did not pay any portion thereof.[55] To be sure, LOIA is expressly aimed at preventing any "shifting of the economic burden of insurance coverage" to the indemnitor. *Marcel*, 11 F.3d at 569. It is undisputed here that Linear bore no cost of the *Marcel* premium paid by Fieldwood on behalf of the "Company Group" pursuant to Fieldwood's obligation under the MSCs. This is consistent with both the public policy advanced by LOIA and the *Marcel* exception, which commends the acquisition of insurance.[56] Therefore, Wood

---

[55] While the Fifth Circuit has not directly addressed this issue, several lower courts have approved the application of the *Marcel* exception when premiums to bind the indemnitor's insurance coverage in favor of a contractor/indemnitee were paid on its behalf by another party. *See, e.g., Richard v. Island Operating Co.*, 2015 WL 403155, at *4-5 (W.D. La. Jan. 27, 2015) (court saw "no material difference between the obligation undertaken by [the indemnitor before it] and the obligation enforced by the [c]ourt in *Marcel* against [the indemnitor there]"); *BJ Servs. Co., USA v. Thompson*, 2010 WL 2024725, at *8 (W.D. La. May 14, 2010) (recognizing application of *Marcel* exception to agreement to extend insurance coverage to members of "Company Group" other than party who paid the premium for such coverage).

[56] *Marcel*, 11 F.3d at 569-70 (discussing and adopting the exception addressed in *Patterson v. Conoco, Inc.*, 670 F. Supp. 182, 184 (W.D. La. 1987) ("the acquisition of liability insurance … is an exercise which should be applauded, not thwarted")).

Group has stated a plausible claim for relief, and FMIC and Certain Excess Underwriters' motions to dismiss Wood Group's claim must be denied.

REC/GOL are in a different position than Wood Group with respect to the "Company Group" and "invitee" analysis. Fieldwood contracted with Kilgore, which in turn contracted with REC/GOL, to provide the *Hannah C* to transport workers to Fieldwood's platform. REC/GOL are in the same position in this case that REC Marine occupied in the *Knox* case. Specifically, REC/GOL do not have a direct contract with Fieldwood and they are arguing that a portion of the Gulf of Mexico should constitute a "premises" for the purposes of defining "invitee." In *Knox*, the Fifth Circuit essentially held that a particular area of the Gulf is not a "premises" controlled by the relevant party, in this case Fieldwood. Therefore, REC/GOL have not stated a valid claim for indemnity as part of Fieldwood's "Company Group."

However, REC/GOL also argue that they are entitled to insurance and indemnity as members of the "Third Party Contractor Group" under sections 13(f)(i), 13(a)(v), and 13(a)(vi) of the Linear/Fieldwood MSC and section 12(b)(i) of the Kilgore/Fieldwood MTCA.[57] REC/GOL further argue that Fieldwood was obligated to provide them with additional insured coverage as part of the "Third Party Contractor Group" due to the reciprocal insurance obligations in the contracts.[58] REC/GOL assert that they "are part of 'Third-Party Contractor Group' because at the very least REC is considered a subcontractor of Kilgore because Kilgore contracted with REC/GOL to provide a vessel for Fieldwood's work. Thus, under the plain terms of the contract Linear is required to defend and indemnify REC/GOL for claims by employees of Linear."[59] REC/GOL reason that, as a result, on the face of their third-party demand and the attached contracts, "there is a plausible set of facts upon which REC/GOL could

---

[57] R. Doc. 50 at 4-5. Similarly, Wood Group also argues that, in addition to being Fieldwood's invitee, and thus part of the "Company Group," it was simultaneously Fieldwood's "Third Party Contractor" as defined by the Linear/Fieldwood MSC. R. Doc. 41 at 7-10.

[58] R. Doc. 50 at 5.

[59] *Id.*

be owed additional insurance coverage – [namely,] if Fieldwood's payment of the *Marcel* premium covers REC/GOL …, Linear's insurance obligations are not invalidated by LOIA."[60] The Court agrees.

Further, the LOIA does not apply where the indemnitee is not negligent or at fault, which cannot be determined until after trial on the merits. *See Borman v. Shamrock Energy Solutions, LLC*, 2019 WL 670402, at *4 (E.D. La. Feb. 19, 2019) (citing *Meloy v. Conoco Inc.*, 504 So. 2d 833, 839 (La. 1987)).  Thus, if REC/GOL are not at fault, the LOIA will not void the insurance-and-indemnity provisions.  Accordingly, at this stage of the proceedings, FMIC's motion to dismiss REC/GOL's third-party demand must be denied for this additional reason.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that FMIC and Certain Excess Underwriters' motions to dismiss (R. Docs. 34, 48 & 101) are DENIED.

New Orleans, Louisiana, this 31st day of May, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[60] *Id.* at 6.