1030-20372 #1461764

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY DURR**<br>**PLAINTIFF** | **CIVIL ACTION NO: 2:18-CV-03742** |
| **VERSUS** | **DISTRICT JUDGE: "M"**<br>**HONORABLE BARRY W. ASHE** |
| **GOL, LLC and**<br>**REC MARINE LOGISTICS, LLC,**<br>**DEFENDANTS** | **MAGISTRATE JUDGE: (1)**<br>**JANIS VAN MEERVELD** |

### REC MARINE LOGISTICS, LLC AND GOL, LLC'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO STRIKE AND/OR LIMIT THE TESTIMONY OF DR. TODD COWEN

**MAY IT PLEASE THE COURT:**

REC Marine Logistics, LLC ("REC") and GOL, L.L.C. ("GOL" and together with REC, "REC/GOL") respectfully request that this Court limit the testimony of plaintiff's life care planner, Dr. Todd Cowen, to testimony about future medical care that is specifically recommended by plaintiff's treating physician. It is well established that in order for a life care planning expert such as Dr. Cowen to testify as to the costs of future medical care, such future medical care must be based on the testimony of a treating physician as to the reasonable need for such care and that such care is related to the incident sued upon. Here, Dr. Cowen provides estimates of future medical costs for plaintiff, Terry Durr, for certain future medical treatments that are not based on the recommendations of a treating physician and are therefore not admissible. As such, REC/GOL respectfully request that this Court either strike such opinions or issue an instruction specifically limiting Dr. Cowen's testimony only to the cost of future care that was specifically recommended by the plaintiff's treating physician.

**FACTUAL BACKGROUND**

Plaintiff, Terry Durr ("plaintiff" or "Durr"), an employee of Linear Controls, Inc., alleges that he was injured on December 17, 2017 while being transported via a personnel basket from a vessel alleged by the plaintiff to be owned or operated by REC and GOL,[1] the HANNAH C, to a platform owned by Fieldwood Energy, LLC and/or Fieldwood Energy Offshore, LLC, the VR 315A.[2] As a result of the incident, plaintiff alleges that he has suffered injuries to his lumbar spine and his left knee. Plaintiff has been treating with Dr. Pierce Nunley regarding his lumbar spine and with Dr. Michael Haynie regarding his left knee.

Plaintiff retained Dr. Todd Cowen to provide a life care plan which provides estimated costs for Durr's alleged future medical expenses. Dr. Cowen provided an initial report on December 27, 2018.[3] In creating his December 27, 2018, report, Dr. Cowen does not appear to have consulted with either of Durr's treating physicians regarding the necessity of any future medical care for Durr.[4] Dr. Cowen provided an updated report dated August 22, 2019, which cost and treatment information appears to supersede the December 27, 2018 report.[5] In this updated report Dr. Cowen recounts that he had a telephone conference with Dr. Pierce Nunley, Durr's treating physician for his alleged lumbar injury.[6] Notably, Dr. Cowen did not discuss Durr's future treatment requirements regarding his knee with Durr's treating physician for his knee, Dr. Michael Haynie. As explained in more detail below, Dr. Cowen provides the costs of numerous future

---

[1] As set forth more fully in GOL's Motion for Summary Judgment, the HANNAH C was owned and operated by REC. GOL acted solely as a boat broker for the HANNAH C and had no operational control over the HANNAH C. Thus, REC is the sole owner/operator of the HANNAH C. Rec. Doc. 147-1.
[2] Rec. Doc. 4, ¶V-VI.
[3] Life Care Plan Prepared for Terry Durr by Dr. Cowen dated December 27, 2018, attached hereto as Exhibit "A."
[4] *Id.*
[5] Updated Life Care Plan for Terry Durr by Dr. Cowen dated August 22, 2019, attached hereto as Exhibit "B."
[6] Exhibit "B," p. 7.

medical treatments that are not supported by the opinions of treating physicians and therefore do not meet this Court's standard for the expert testimony of a life care planner.

## LAW AND ARGUMENT

1. **Standard for a Life Care Planner's Opinions and Testimony**

Under Federal Rule of Evidence 702, the standards explained in *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, are applied to all types of expert testimony, including testimony by life care planners. *Snider v. New Hampshire Ins. Co.*, No. 14-2132, 2016 WL 3193473, *1 (E.D. La. June 9, 2016) (Morgan, J.). Thus, a life care planner's testimony must be both reliable and relevant. *Id.* As another section of this Court has explained, life care planners may testify as to the costs of future medical needs of a plaintiff "predicated upon the testimony of treating physicians as to the reasonable need for such care, and the cost of such care." *Id.* at *2. A life care planner cannot testify as to his or her diagnosis of possible conditions or future medical costs unless a treating physician has "testified to the reasonable need for and extent of such care." *Id.* Likewise, a life care planner cannot themselves prescribe "home care" for the remainder of a plaintiff's life and cannot testify as to the costs related thereto unless a treating physician has testified that there is a reasonable need for such home care. *Id.*

Finally, the testimony of the treating physician must meet the baseline evidentiary threshold in order to be admissible: there must be evidence that the projected treatment is treatment that the plaintiff will "probably need, not simply treatment that he might need." *Anders v. Hercules Offshore Servs. LLC*, 311 F.R.D. 161, 165 (E.D. La. 2015) (Africk, J.). In sum, a life care planner like Dr. Cowen may not himself purport to determine what future care Durr will need—Dr. Cowen may only testify as to the costs of the future care that is determined to be reasonably medically necessary as testified to by Durr's own treating physicians. *See id.* Where Dr. Cowen's report goes

3

beyond those requirements, his opinions should be stricken, or he should be instructed that he may not testify as to the costs for future care which plaintiff's treating physicians have not testified is reasonably necessary.

   **2. Dr. Cowen Includes Costs in his Life Care Plan that are not Based on Recommendations from Treating Physicians.**

Dr. Cowen's report provides opinion evidence regarding the costs of future medical treatment that is not based on recommendations from Durr's two treating physicians, Dr. Haynie (knee) and Dr. Nunley (back) as to what future treatment is reasonably medically necessary.

   *a. Future Treatment Regarding Durr's Knee.*

Dr. Cowen did not speak with Dr. Haynie regarding the need for future medical treatment for Durr's knee.[7] Further, during Durr's visit to Dr. Haynie on July 16, 2019, Dr. Haynie explained to Durr that "no surgery or medication wouldn't [sic] really help his problem."[8] Thus, although Dr. Haynie had previously recommended an arthroscopic knee surgery, Dr. Haynie's most recent recommendation shows that surgery is not necessary. Despite Dr. Haynie's opinion that an arthroscopic knee surgery is not needed, Dr. Cowen nevertheless included a charge of $14,996.93 for an arthroscopic knee surgery in his life care plan.[9] Because no treating physician has said that Durr will reasonably need knee surgery, Dr. Cowen cannot testify as to the future costs of such knee surgery. *See Snider*, 2016 WL 3193473 at *2. Because there is no medical testimony supporting the need for future arthroscopic knee surgery, Dr. Cowen's opinion on this cost should be stricken and/or Dr. Cowen should be instructed that he may not testify as to such an opinion.

---

[7] Exhibit "B," p. 7.
[8] Medical Records of Dr. Michael Haynie, dated 7/16/19, attached hereto as Exhibit "C."
[9] Exhibit "B," p. 25.

Similarly, Dr. Cowen's report states that Durr will require future knee x-rays and MRI scans on a routine basis.[10] Specifically, Dr. Cowen's report includes costs for knee x-rays once every four years for 23 years.[11] However, Dr. Haynie has not stated in his medical records (and certainly not in the non-existent consultation with Dr. Cowen) that Durr will need any future x-rays of the knee, let alone the number of x-rays Dr. Cowen identifies. The same is true with the future MRI scans, which Dr. Cowen indicates Durr will need every 8 years for 23 years. However, no medical records exist suggesting that Durr will probably need future knee x-rays or MRIs.[12] Dr. Cowen's opinions on the future medical costs of x-rays and MRIs thus do not meet the required standard for a life care planner, and therefore he should not be allowed to testify to the necessity of such medical care at trial.

    b. *Future Treatment Regarding Durr's Lumbar Spine*

Although Dr. Cowen spoke with Dr. Nunley regarding future treatment for Durr's back, Dr. Cowen's report still included treatment for Durr's back that Dr. Nunley did not advise Durr would reasonably need in the future. Dr. Nunley did not state that Durr would need a medical branch block treatment.[13] However, Dr. Cowen included the cost for one medial branch block in his estimate of future medical expenses.[14] Because no treating physician has testified that a medial branch block would be required in the future, such opinion should be stricken and/or Dr. Cowen should be instructed that he cannot testify as to items that were not identified as medically necessary by a treating physician. Dr. Cowen further includes costs for a TENS unit and a lumbar support brace.[15] Again, Dr. Nunley has not prescribed either a back brace or a TENS unit, and thus

---

[10] Exhibit "B," p. 16.
[11] Exhibit "B," p. 41.
[12] Exhibit "B," p. 43.
[13] Exhibit "B," p. 7.
[14] Exhibit "B," p. 36.
[15] Exhibit "B," pp. 58-60.

there is no evidence that such treatment is required. Therefore, Dr. Cowen should not be able to testify as to the costs for such future medical care.

  c. *Other Treatment Included in the Life Care Plan*

In addition to specific treatment relating to Durr's back and knee, Dr. Cowen also included costs for something which he identifies as "essential services" in the amount of $38,880.00 in the life care plan.[16] Nowhere in Dr. Cowen's report is it explained what the "essential services" are. Further, there is no evidence from any treating physician that Durr would require any such "essential services." Dr. Cowen also included a charge for a home health aide, but again, no testimony or record from any treating physician states that a home health aid would be necessary.[17] As Judge Morgan explained in *Snider*, a life care planner cannot themselves prescribe home health aides and can only provide the costs for such if the need for the home health aide is medically necessary as testified to by a treating physician. 2016 WL 3193473 at *2.

Further, Dr. Cowen included the cost for a "comprehensive metabolic panel" one time per year for 27 years.[18] However, no treating physician has stated that such a metabolic panel is either related to Durr's alleged injuries, nor has any physician recommended or otherwise indicated that Durr will probably require future metabolic panels. Thus, this opinion should be stricken

Last, when opining as to his cost estimate for Durr's medications, Dr. Cowen averages the costs of brand name drugs and the generic drugs to artificially increase the costs in the life care plan. For example, for the analgesic Ultram, Dr. Cowen averaged the costs for the name brand, $324.90 from one store and $288.79 from another store, with the cost for the generic drug, a mere

---

[16] Exhibit "B," p. 63.
[17] Exhibit "B," p. 67.
[18] Exhibit "B," pp. 50-51.

$16.79.[19] The same is true for Dr. Cowen's calculations for the price of the muscle relaxant.[20] There is no evidence that a treating physician has stated that Durr would be required to take the name brand medication instead of the generic medication. Indeed, Durr's pharmacy records indicate that he has been taking the generic version of the drugs.[21] Because there is no opinion by a treating physician that Durr must take the name brand drug, Dr. Cowen's opinions regarding the costs of name brand drugs are not admissible because they do not meet the evidentiary standard to admit testimony of a life care planner—they are not based on the reasonable medical probability that such care (or in this case brand of medications) would be required. *See Anders*, 311 F.R.D. at 165; *see also McCloskey v. Higman Barge Lines, Inc.*, 269 So. 3d 1173, 1181 (La. App. 4 Cir. 4/10/19). As such, Dr. Cowen's opinions regarding the costs of name brand drugs should be stricken, and Dr. Cowen should not be allowed to testify as to the costs of such name brand drugs at trial.

## CONCLUSION

As itemized above, Dr. Cowen's report contains opinions about future medical costs that are not based the recommendations of treating physicians regarding Durr's necessary or probable future treatment. Rather, Dr. Cowen provides numerous opinions for costs of future medical care which no physician has stated will be necessary. As such, REC/GOL respectfully request that this Court either strike the testimony of Dr. Cowen regarding the costs of any treatment that has not been stated to be reasonably medically necessary and/or issue an order directing that Dr. Cowen

---

[19] Exhibit "B," p. 18.
[20] Exhibit "B," p. at 17.
[21] *See, e.g.*, Pharmacy Records from Walgreens Drugs, attached hereto as Exhibit "D"; Pharmacy Records from Specialists Pharmacy, attached hereto as Exhibit "E." These pharmacy records show that Durr has been filling prescriptions for Tizandine, the generic form of Zanaflex, and Tramadol, the generic version of Ultram.

7

will not be permitted to testify at trial as to the cost of any projected treatment that is not supported by sufficient evidence. *See Anders*, 311 F.R.D. at 165; *Snider*, 2016 WL 3193473 at *2.

        Respectfully submitted,

        ***/s/ Elizabeth B. McIntosh***
        Salvador J. Pusateri T.A. (#21036)
        Kristin K. Robbins (#31303)
        Elizabeth B. McIntosh (#36575)
        PUSATERI, JOHNSTON, GUILLOT &
        GREENBAUM
        1100 Poydras Street-Suite 2250
        New Orleans, Louisiana 70163
        Telephone: (504) 620-2500
        Facsimile: (504) 620-2510
        Salvador.Pusateri@pjgglaw.com
        Kristin.Robbins@pjgglaw.com
        Elizabeth.McIntosh@pjgglaw.com
        **ATTORNEYS FOR GOL, REC and The Club**