UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY DURR** | **CIVIL ACTION NO. 18-CV-3742 M(1)** |
| **VERSUS** | **JUDGE BARRY W. ASHE** |
| **GOL, L.L.C.,** *et al* | **MAG. JUDGE JANIS VAN MEERVELD** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
REC/GOL'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY
AND EXPERT REPORT OF CAPTAIN GREGORY C. DALEY**

Plaintiff, Terry Durr, through undersigned counsel, respectfully submits this memorandum in opposition to the Motion in *Limine* to Exclude Testimony and Expert Report of Captain Gregory C. Daley ("Motion"), filed by Defendants GOL, LLC and REC Marine Logistics, LLC (collectively, "REC/GOL") (Doc. 148). Captain Daley is qualified to offer opinions on industry standards regarding a vessel captain's use of a Dynamic Positioning System ("DPS") and interpretation of weather forecasts. As an expert, Captain Daley is also allowed to rely on disputed testimony, about which he may be cross-examined at trial. REC/GOL has not presented any legitimate challenge to Captain Daley's qualifications or methodology, and the motion should be denied.

**I.     INTRODUCTION**

Captain Gregory C. Daley has offered three opinions on liability issues: (1) if Crowder, Captain of the M/V *Hannah C*, had held position properly, the accident would not have occurred; (2) if the DP system had been functioning and used, the accident would not have happened; and (3) if Ted Thompson, deckhand of the M/V *Hannah C*, had used the tagline properly, using 37

pounds of force to restrain the basket, the accident would not have occurred.[1] To be clear, contrary to REC/GOL's motion, Captain Daley does *not* offer an expert opinion as a meteorologist on weather conditions on the day of the accident.

Although REC/GOL's Motion does not challenge Captain Daley's third opinion regarding the deckhand's failure to use the tagline, it takes issue with his first two opinions regarding Captain Crowder's fault and the utility of the DPS. Notwithstanding the invocation of *Daubert* and Federal Rule of Evidence 702, REC/GOL's Motion, in reality, has little to do with Captain Daley's qualifications, the methodology he employed, or the reliability of his opinions. Rather, at the core of the REC/GOL's Motion are three issues:

(1) REC/GOL does not like the assumptions on which Captain Daley's opinions are based, particularly to the extent that the assumptions regarding the movement of the vessel during the personnel transfer are provided by the testimony of the crane operator involved in the accident, as opposed to the M/V *Hannah C* captain's testimony;

(2) REC/GOL does not like Captain Daley's opinion that use of the DPS would have been safer and avoided the accident; and

(3) REC/GOL does not like Captain Daley's discussion and explanation of how a trained vessel master would control a self-propelled vessel in the weather and wave conditions that were forecasted and existed at the time of the accident.

That REC/GOL disagrees with certain key assumptions made by Captain Daley and does not like that his opinions place fault on REC/GOL does not warrant excluding Captain Daley's testimony at trial, and the Motion should be denied.

---

[1] Daley Report at pp. 48, 52, 61 (Doc. 148-4 at 49, 53; Doc. 148-5 at 7).

## II.     RELEVANT BACKGROUND

On December 17, 2017, REC/GOL were the owners and/or operators of M/V *Hannah C*, a supply vessel transporting Plaintiff to an oil and gas production facility, where Plaintiff was to perform work. Upon arriving at the production facility, Plaintiff boarded a personnel basket on the deck of the M/V *Hannah C* that was lifted by a crane located on the oil and gas production facility. The captain and deckhand of the M/V *Hannah C*, along with the crane operator on the platform facility, did not properly control the vessel or the personnel basket, causing a loss of control of the personnel basket that resulted in Plaintiff and the basket swinging into a chain that was holding vessel cargo. The impact caused Plaintiff to incur seriously injuries.

Plaintiff filed this suit for general maritime negligence against REC/GOL and retained Captain Gregory C. Daley, a respected and experienced captain and maritime expert, to testify as to the cause of the accident and maritime standards regarding controlling a vessel in the open sea. As discussed below, Captain Daley's opinions are admissible because they are based on training and over 10 years of experience as a Master of self-propelled offshore vessels and certification in use of DPS.

## III.    LAW AND ARGUMENT

### A.    That Captain Daley based his opinions in part on disputed testimony does not justify exclusion under the Rules of Evidence or *Daubert*.

Federal Rule of Evidence 702 provides that expert opinion testimony is admissible if it will assist the trier of fact to understand the evidence or determine a fact at issue. To meet this standard: (1) the expert's opinion must be based on sufficient facts or data; (2) the opinion must be the product of reliable principles and methods; and (3) the expert must have applied those principles and methods reliable to the facts of the case. Fed. R. Evid. 702. Rule 703 discusses the factual foundation for the expert's opinion: "[t]he facts or data in the particular case upon which an expert

bases an opinion or inference may be those *perceived by or made known to the expert*…." Fed. R. Evid. 703 (emphasis added).  If the expert's assumptions are reasonably based on the facts, then his testimony is admissible.  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996); *McLean v. 988011 Ontario, Ltd*, 224 F.3d 797, 801 (6th Cir. 2000).

That a party disagrees with assumptions made by an expert does not lead to exclusion as long as the expert's opinions are based on "sufficient facts and data" in the case and are not the result of pure speculation or conjecture.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).  An expert's opinion should not be excluded from trial unless it is demonstrated that there is no basis for the opinion and the underlying assumptions and facts are unreliable. *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (expert witnesses are allowed wide latitude in choosing the sources on which they base their opinions, it is the court's role, as gatekeeper, to ensure the expert's sources are reliable).

In this case, Defendants challenge Captain Daley's finding that the M/V *Hannah C* moved 10 feet towards the platform from the time the personnel basket was placed on the deck to the time at which the personnel based was lifted from the deck.  Captain Daley obtained this fact from the deposition testimony of Michael Broussard, the crane operator at the production facility, who specifically testified that the vessel drifted towards the platform 10 to 15 feet during the few minutes that elapsed during the personnel basket transfer.[2]   In the Motion, REC/GOL cites to the contrary deposition testimony of Captain Crowder, the operator of the M/V *Hannah C* at the time

---

[2] *See* Daley Report at 13, n. 27 (Doc. 148-4 at 14, n. 27).

4

of the transfer.[3] Captain Crowder disputes that the M/V *Hannah C* moved 10 feet and testified that the vessel did not move or drift during Mr. Durr's transfer.[4]

Captain Daley was provided with both Crowder's and Broussard's testimony and considered their testimony along with information regarding the wave and wind forces and the mechanics of the accident to determine that it is more likely than not that the M/V *Hannah C* moved 10 feet and Captain Crowder failed to hold the vessel's position.[5] Captain Daley's finding that the M/V *Hannah C* moved 10 feet informed the remainder of his report. REC/GOL's expert, Captain David H. Scruton, relied on the same information and opines that a vessel such as the M/V Hannah C could not have moved 10 feet in the time during which the personnel basket transfer was completed.[6] That REC/GOL's expert relied on the same disputed testimony on which Captain Daley relies reveals that REC/GOL is not challenging the information upon which Captain Daley's opinions are based, but they take issue with the opinion itself. Nevertheless, Captain Daley, as well as all experts, may rely on disputed facts in forming an expert opinion.

As an expert, Captain Daley is permitted to base his opinions on a disputed fact perceived and made known to him. Fed. R. Evid. 703. It is not Captain Daley's responsibility to prove the accuracy of the factual assumption that the M/V *Hannah C* drifted 10 feet while the personnel basket rested on its deck—that is the Plaintiff's job at trial. *See, e.g.*, *Berk-Cohen Associates, LLC v. Orkin Exterminating Co.*, No. Civ. A. 94-3090, 2004 WL 445132 (E.D. La., Mar. 10, 2004) (Fallon, J.) (denying motion to exclude expert based on challenge to factual basis of expert's opinion and explaining that it is the plaintiffs' burden to show that the assumptions that support

---

[3] Memorandum in Support of Motion, Doc. 148-1 at 5.
[4] *Id*.
[5] Daley Report at 51 (Doc. 148-4 at 52).
[6] Exhibit A, Excerpt from Report of Captain Scruton at 18 (GOL 5154).

the expert's opinion have a basis in fact and are relevant). Nevertheless, Captain Daley has pointed to information such as weather conditions and the positioning of the chain and basket prior to the lift beginning that corroborate that the vessel did indeed move as described by Mr. Broussard.

Plaintiff intends to prove at trial that the M/V *Hannah C* moved 10 feet from the time the personnel basket was placed on the deck to the time the basket was lifted from the deck. The crane operator lifting the personnel basket that day, Michael Broussard, has testified that he watched the M/V *Hannah C* drift anywhere from 10 to 15 feet. Mr. Broussard will testify at trial, and Plaintiff will use that testimony along with other relevant evidence to persuade the finder of fact that the vessel did in fact move as Mr. Broussard described. Captain Daley's reliance on that evidence is reasonable. If the Defendants disagree with that assumption and Captain Daley's resulting conclusion that the drift caused the personnel basket to swing like a pendulum into the chain, they can challenge Captain Daley's testimony at trial with "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof …." *Daubert*, 509 U.S. at 596.[7] In fact, REC/GOL has already prepared such contrary evidence that they intend to utilize at trial.[8] "[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo*, 826 F.2d at 422. The issues raised by REC/GOL's Motion are issues that are correctly left for jury determination.

---

[7] Notably, Defendants have yet to perform any examination of Captain Daley, as his deposition is scheduled for December 9, 2019.
[8] *See* Exhibit B, GOL, LLC, REC Marine Logisitics, LLC and the American Steamship Owner's Mutual Protection and Indemnity Association, Inc.'s Expert Disclosures, at 2.

6

>   **B.  Captain Daley's opinions are properly based on his own training, knowledge, and experience in the maritime industry.**

Federal Rule of Evidence 702 allows qualification of an expert based on their training and experience in a particular subject matter. Captain Daley is a licensed Master of Self-Propelled Vessels of Unlimited Tonnage on Oceans in the United States and Vanuatu.[9] Captain Daley has worked as a master of oilfield supply vessels in the Gulf of Mexico and performed voyages world-wide.[10] He has been qualified as an expert in marine operations, marine safety, marine navigation, and marine regulations in various U.S. District Courts.[11] He has experience with offshore crane loading, offloading, and backloading cargo, including personnel baskets, tubular, containers, pallets, cutting baskets, spools of wire, super-sacks, portable tanks, and similar types of equipment.[12] Captain Daley is also a certified Associate Safety Professional of the American Society of Safety Professionals and an Associate Fellow of the Nautical Institute of London, which is the body that issues DPS licenses.[13] Captain Daley is a past member of the Association of Crane and Rigging Professionals, and a current member of the Society of Naval Architects and Marine Engineers.[14] Finally, he has been certified in DPS operations and has extensive hands-on operational experience with DPS vessels.[15]

Notwithstanding his training and experience, REC/GOL complains that Captain "Daley cites to no industry standard regarding use of DP, nor any regulatory scheme addressing or

---

[9] Daley Report at 69 (Doc. 148-5 at 15).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] Daley Report at 60 (Doc. 148-5 at 6).

7

applying to the use of DP on offshore supply vessels."[16]  The absence of a regulatory scheme expressly addressing the use of DPS on offshore supply vessels, however, is one of the very reasons that the Plaintiff retained an expert to provide testimony on the relevant industry standards and practices.  Captain Daley is qualified as an expert in marine operations, marine safety, marine navigation, and use of DPS, and, accordingly, should be allowed to testify regarding the applicable standards of care that applied to the M/V *Hannah C* and whether Captain Crowder's conduct and REC/GOL's failure to repair the DPS on the M/V *Hannah C* fell below those standards.  *See*, *e.g.*, *Howard v. Offshore Liftboats, LLC*, No. 13-4811, 2016 WL 183237, at *3 (E.D. La., Jan. 14, 2016) (citing *Richardson v. SEACOR Lifeboats, LLC*, NO. 14-1712, 2015 WL 2193907, at *3 (E.D. La., May 22, 2015)) (allowing expert to testify about the "reasonable standard of care" and whether the defendant "met that standard of care" but prohibiting expert from offering legal conclusions and opinions on whether certain parties were negligent)).

      More specifically, at issue is whether the accident would have been less likely to occur had Captain Crowder maintained adequate positioning of the vessel and/or had the M/V *Hannah C* utilized a properly-functioning DPS. The jury at trial will need assistance from witnesses with a specialized understanding of DPS and vessel control to determine whether the DPS would have made this accident less likely to occur and whether Captain Crowder was otherwise negligent.  *See Vogler v. Blackmore*, 352 F.3d 150, 156 n. 5 (5th Cir. 2003) ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.") (quoting Fed. R. Evid. 702 Advisory Committee's Note).  Captain Daley has the

---

[16] Memorandum in Support of Motion, Doc. 148-1 at 7.

requisite knowledge and expertise to provide such enlightenment, as he has thousands of hours of DPS experience using and training others to use DPS in a variety of vessels in numerous foreign and domestic locations.[17]  Although there are no regulations or statutes requiring the use of DPS, Captain Daley is an expert in determining when and how to use a DPS to make offshore vessel operations safe.  The lack of regulations stating whether DPS makes certain tasks safer only increases the need for expert testimony on the subject.

Moreover, at the core of REC/GOL's Motion regarding Captain Daley's opinion that the accident would have been avoided and it would have been safer had the M/V *Hannah C*'s DPS been operable and employed on the date of Mr. Durr's accident is that REC/GOL simply does not like that Captain Daley's opinion is at odds with its expert's opinion that manual control was just as safe under the circumstances.[18]  That a party disagrees with an expert's opinions is not a basis for exclusion. As with REC/GOL's challenges to Captain's Daley's assumptions, REC/GOL may challenge Captain Daley's final opinion that DPS would have made the maneuver safer through vigorous cross-examination "in the crucible of the adversarial system." *US v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996).  Whether Captain Daley's or Captain Scruton's (REC/GOL's expert) opinion regarding the DPS is more persuasive is a determination to be made by the jury.

      **C.**    **Captain Daley is not offering an expert meteorologist opinion as to what were the actual weather conditions at the time of the accident.**

Finally, although REC/GOL asks that Captain Daley's opinion about weather conditions be excluded, Captain Daley does not offer an expert scientific opinion regarding weather conditions.  Rather, as REC/GOL points out, the Plaintiff retained Marshall Earle, Ph.D. to offer expert testimony at trial regarding weather and wave conditions at the time of the accident.  Captain

---

[17] Daley Report at 60 (Doc. 148-5 at 6).
[18] Exhibit A, Excerpt from Report of Captain Scruton, at 19 (GOL 5155).

9

Daley does discuss and explain his understanding of the weather and wave conditions from his perspective as a captain and mariner who routinely relies on weather forecasts, but his three expert opinions regarding liability are set forth on pages 48, 52, and 61 of his report and do not include any expert opinion on weather conditions. Moreover, he specifically stated he was relying on Dr. Earle's expert report as to wave conditions.[19]

That Captain Daley also considered and discussed meteorological data from the National Oceanic and Atmospheric Administration ("NOAA") and National Weather Service ("NWS") is not a basis for excluding his discussion of same at trial to the extent it informed any part of his opinions. Indeed, what REC/GOL characterizes as Captain Daley's "meteorological opinion" is Captain Daley's discussion and explanation of how the experienced mariner must be able to interpret the regular forecasts provided to mariners from the NOAA and NWS.[20] Captain Daley has experience interpreting these forecasts from the perspective of a vessel captain and can properly discuss what Captain Crowder should have understood about those forecasts as a mariner and the operator of the M/V *Hannah C*. Captain Daley is qualified to offer opinions as to how mariners interpret the weather forecasts provided by meteorologists and how that interpretation affects how to captain a vessel.

## IV. CONCLUSION

REC/GOL's Motion to Exclude Captain Daley's testimony does not reveal any flaw or error in Captain Daley's methodology. Nor has it demonstrated that Captain Daley is unqualified to render an expert opinion in this matter regarding safe operations of an offshore supply vessel. Instead, REC/GOL has masqueraded attacks on the credibility of various fact witnesses' testimony

---

[19] Daley Report at 37, 48, 50 (Doc. 148-4 at 38, 49, 51).
[20] Daley Report at 24-36 (Doc. 148-4 at 25-37).

as a *Daubert* challenge. It is for the jury at trial to determine whether the facts relied upon by Captain Daley are credible. If the jurors do find that evidence to be credible, Captain Daley's expert opinions and calculations will certainly assist them in determining apportionment of fault. The REC/GOL's Motion should be denied.

                                      Respectfully submitted,

                                      **WILLIAM GEE, LTD.**
                                      (A PROFESSIONAL LAW CORPORATION)
                                      WILLIAM GEE
                                      Louisiana State Bar No. 14282
                                      PINHOOK TOWER
                                      2014 West Pinhook Road, Suite 501
                                      Lafayette, LA 70508
                                      Telephone: (337) 222-2222
                                      Facsimile: (337) 289-0809
                                      William@WilliamGee.com

                                            And

                                      JENNIFER L. THORNTON (La. Bar. No. 27109)
                                      ENDYA L. HASH (La. Bar. No. 38260)
                                      STANLEY, REUTER, ROSS, THORNTON &
                                          ALFORD, LLC
                                      909 Poydras Street, Suite 2500
                                      New Orleans, LA 70112
                                      Telephone: (504) 523-1580
                                      Facsimile: (504) 524-0069
                                      jlt@stanleyreuter.com
                                      elh@stanleyreuter.com

                                      By:  */s/ Jennifer Thornton*

                                      *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of November, 2019, the foregoing pleading was filed electronically in the lead consolidated case using the Court's CM/ECF system and this pleading was thereby served on all counsel of record.

                                                  */s/ Jennifer Thornton*