UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TERRY DURR | CIVIL ACTION |
| VERSUS | NO. 18-3742 |
| GOL, LLC and REC MARINE LOGISTICS, LLC | SECTION M (1) |

## ORDER & REASONS

Before the Court are motions *in limine* filed by defendant REC Marine Logistics, LLC ("REC")[1] to exclude the expert testimony of Gregory C. Daley[2] and Dr. Todd Cowen.[3] Plaintiff Terry Durr opposes the motions,[4] and REC replies in further support of the motions.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying both motions.

**I.    BACKGROUND**

On December 17, 2017, Durr, who was employed by third-party defendant Linear Controls, Inc. ("Linear"), was injured during a personnel-basket transfer from the *M/V Hannah C*, a vessel owned and operated by REC, to a platform affixed to the Outer Continental Shelf ("OCS") off the coast of Louisiana. Defendant Fieldwood Energy, LLC ("Fieldwood") owned the fixed platform, and contracted with defendant Wood Group PSN, Inc. to operate it.

At the time of the accident, the *Hannah C* was transporting Durr to the Fieldwood platform. Durr boarded a personnel-transfer basket that was to be lifted onto the platform from

---

[1] GOL, LLC also joined in the motions, but plaintiff's claims against GOL were dismissed after the motions were filed. R. Doc. 161.
[2] R. Doc. 148.
[3] R. Doc. 149.
[4] R. Docs. 158 & 159. Defendants Wood Group PSN, Inc., Fieldwood Energy Offshore LLC, and Fieldwood Energy LLC filed a response to REC's motion to exclude Daley, supporting the motion as it pertains to the dynamic positioning system, and opposing it as it pertains to Daley's opinions concerning the vessel's station keeping. R. Doc. 160.
[5] R. Docs. 69 & 71.

the deck of the vessel by a crane located on the platform and operated by a Wood Group employee. Durr alleges that, due to rough seas, the *Hannah C*'s master lost control of the vessel, causing it to travel toward the platform and, through a sequence of events, resulted in the crane striking a chain holding the vessel's cargo, which caused Durr's injuries. Durr alleges that the *Hannah C*'s deckhand did not hold the personnel-transfer basket's tagline and the crane operator failed to abort the lift. Durr sued REC, Wood Group, and Fieldwood alleging that all are liable for his injuries due to their negligence. Durr also sued REC's insurer, American Steamship Owners Mutual Protection and Indemnity Association, Inc.[6]

## II. LAW & ANALYSIS

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[6] Wood Group and REC filed third-party complaints against Linear, its primary general liability insurer, and its excess insurers for defense and indemnity. R. Docs. 26 & 38. The facts underlying the third-party complaints are not relevant to the motions before the Court.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 508 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors or requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and

then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018) (quotations and citations omitted).

### A. Daley

REC seeks to exclude the testimony of Daley, Durr's purported maritime expert.[7] REC does not contest Daley's general qualifications to testify as an expert mariner.[8] Rather, REC seeks to exclude three specific opinions offered by Daley.[9] First, REC seeks to preclude Daley from testifying as to the weather and sea conditions at the time of the accident arguing that he lacks expertise in meteorology and oceanography, and that his opinions in this area would be cumulative to those offered by Durr's purported meteorological expert, Marshall Earle, Ph.D.[10] Next, REC argues that Daley's opinion that the *Hannah C* made a ten-foot aft movement during the personnel basket transfer relies on disputed issues of fact and constitutes an impermissible legal conclusion.[11] Finally, REC argues that the Court should exclude Daley's opinion that the accident would not have occurred if the *Hannah C*'s captain had used a dynamic positioning ("DP") system because this opinion is not based on industry standards and lacks analysis regarding the appropriate circumstance for use of a DP system versus manual control.[12]

---

[7] R. Doc. 148.
[8] R. Doc. 148-1.
[9] *Id.* at 1.
[10] *Id.* at 4-5 & 8-10.
[11] *Id.* at 5-6 & 10-13.
[12] *Id.* at 6-7 & 13-14.

Durr argues that Daley, who is an experienced mariner, is qualified to offer the opinions in his report.[13] Durr submits that Daley does not offer any opinions regarding the weather conditions on the date of the accident, but rather relies on Earle's meteorological opinions and instead explains how captains interpret and account for the weather conditions in their operation of vessels.[14] Durr also argues that Daley's opinion regarding the movement of the vessel is based on testimony in the record, and he does not make a legal conclusion, but rather offers his expert opinion on what happened based on the contested facts.[15] With respect to the DP system, Durr argues that Daley's opinions are based on his own experience as a captain and are especially relevant considering the lack of industry standards and regulations regarding the use of such equipment.[16]

Daley's experience as a licensed vessel captain qualifies him to testify as an expert mariner. His opinions concerning the movement of the vessel and the DP system are relevant and reliable because they are based on his experience as applied to his observations in this case. Although he does not have any expertise in meteorology, Daley's report states that he relied on Earle's meteorological opinions and he applied them in forming his own opinions about vessel navigation. This is well within the ambit of Daley's expertise.[17] To the extent REC questions the content of and support for Daley's report, REC will have an opportunity to explore these issues through cross-examination of Daley and the presentation of countervailing testimony. Moreover, "questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (emphasis in original) (citation omitted). As such, REC's motion to exclude Daley is DENIED.

---

[13] R. Doc. 158.
[14] *Id.* at 9-10.
[15] *Id.* at 4-6.
[16] *Id.* at 7-9.
[17] Daley will not be permitted to offer meteorological testimony cumulative to that of Earle, but this is a matter best assessed at trial in the context of the testimony rather than on a motion *in limine*.

**B. Cowen**

REC seeks to exclude certain opinions offered by Cowen, Durr's purported expert life care planner.[18] REC argues that Cowen's opinions regarding the following costs should be excluded because they are not based on testimony from Durr's treating physician: knee surgery, medical branch block treatment for the lumbar spine, a home health aide, and yearly comprehensive metabolic panels.[19] REC also seeks to exclude Cowen's opinion that Durr will require $38,880.00 worth of "essential services" because Cowen does not identify what constitutes "essential services," nor is there any testimony from a treating physician to support such charges.[20] Further, when estimating Durr's medication costs, Cowen averaged the prices of the generic drugs with the name-brand versions to arrive at a cost, which REC argues is improper considering that Durr is currently taking only generic drugs and no treating physician has opined that Durr will require the name-brand versions in the future.[21]

Durr argues that Cowen's opinions should not be excluded because it is not necessary for a life care planner's opinions to be based on the testimony of treating physicians, especially here where Cowen is a medical doctor who is qualified to opine on Durr's future treatment requirements.[22] Durr argues that Cowen is qualified to give the opinions stated in his report and he used a reliable, industry-approved methodology in arriving at the figures reflected in his report.[23] Further, Durr argues that each of Cowen's contested opinions is supported by the medical records.[24]

REC's motion is largely based on *Snider v. New Hampshire Insurance Company*, 2016 WL 3193473, at *2 (E.D. La. June 9, 2016), where the court noted that it "allows life care

---

[18] R. Doc. 149.
[19] R. Doc. 149-1 at 4-6.
[20] *Id.* at 6.
[21] *Id.* at 6-7.
[22] R. Doc. 159 at 3-14.
[23] *Id.*
[24] *Id.* at 10-14.

planners to testify as to future healthcare needs, predicated upon the testimony of treating physicians as to the reasonable need for such care, and the cost of such care," and noted that the life care planner would not be able to offer testimony if she could not "specifically identify the treating physician upon whose report or testimony she relies prior to testifying as to the need for and future costs of that care." However, other courts have found that there is no requirement that an expert life care planner consult with treating physicians or independent medical doctors before formulating a life care plan. *See Green v. Polyester Fibers, LLC*, 2015 WL 6158813, at *2 (N.D. Miss. Oct. 20, 2015) (interview with subject of life care plan and review of medical records were sufficient to allow testimony of qualified life care planner concerning future healthcare); *Hegwood v. Ross Stores, Inc.*, 2007 WL 9711993 at *4 (N.D. Tex. Jan. 17, 2007).

Cowen is both a medical doctor and a qualified life care planner. Another section of this court recently found that, with such credentials, Cowen is qualified to opine on a plaintiff's future healthcare needs. *Barrios v. Centaur LLC*, 2019 WL 424679, at *4 (E.D. La. Feb. 1, 2019). Cowen used his expertise in both areas to formulate his opinions regarding Durr's future healthcare needs, and those opinions seem to be consistent with either the recommendations of Durr's treating physicians (*i.e.,* knee surgery and lumbar injections) or an arguable standard of care (*i.e.*, home health services for a post-operative patient that lives alone, and yearly comprehensive metabolic panels conducted on a patient taking medications). Further, Cowen explains that averaging name-brand and generic medication prices is standard practice in the industry. REC's concerns regarding the bases of Cowen's opinions can be addressed through cross-examination of Cowen and the presentation of countervailing testimony, as those issues go to the weight, not the admissibility, of Cowen's testimony. *Primrose Operating*, 382 F.3d at 562. As such, REC's motion to exclude Cowen is DENIED.

**III.     CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that REC's motion *in limine* to exclude the expert testimony of Daley (R. Doc. 148) is DENIED.

IT IS FURTHER ORDERED that REC's motion *in limine* to exclude the expert testimony of Cowen (R. Doc. 149) is DENIED.

New Orleans, Louisiana, this 2nd day of December, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE